## Perelman et al. *v.* Yeadon Borough Board of Adjustment et al., Appellants.

Argued November 19, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*E. Leroy van Roden,* for appellants.

*Samuel A. Montgomery,* for appellees.

OPINION BY BALDRIGE, J., February 28, 1941:
This appeal is from the decree of the learned court

below setting aside the action of the Board of Adjustment of the Borough of Yeadon, Delaware County, in refusing the application of Lewis Perelman, Sarah Perelman, his wife, and W. Raymond Evans to change a certain vacant lot or piece of land from class B residence district to class C business district, and thus permit the parking of automobiles thereon. The appellees moved to quash this appeal taken by the Board of Adjustment, Borough Council of Yeadon, and the Borough of Yeadon.

The appellants concede that the Board of Adjustment has no such standing in this proceeding as would give it the right to appeal from the order of the court below. That question was definitely determined in *Lansdowne Borough Board of Adjustment's Appeal*, 313 Pa. 523, 170 A. 867. The Supreme Court there stated that it was not called upon to decide whether the Borough of Lansdowne, as representative of all the property owners therein, had such an interest as enabled it to take an appeal from the order of the court below as the borough was not an appellant. Compare *Ward's Appeal*, 289 Pa. 458, 464, 465, 137 A. 630.

Section 1 of the Act of June 29, 1923, P. L. 957, 53 PS §15731, provides, inter alia, as follows: "For the purpose of promoting health, safety, morals, or the general welfare of boroughs ...... councils of boroughs ...... are hereby empowered to regulate and restrict the ...... location and use of buildings, structures, and land for trade, industry, residence, or other purposes; ......"

Section 7, 53 PS §15737, of the Act accords the right to appeal to a court of record to "any person aggrieved, or ...... any officer, department, board, or bureau of the municipality affected ......", but does not give an express right to appeal from the court of common pleas to appellate courts.

The Borough Council, as a collective representative of all residents and property owners, is undoubtedly interested in the enforcement of the regulations contained in the ordinance. This is so notwithstanding the borough

originally passed the zoning legislation and thereafter appointed the Board of Adjustment to administer its provisions. The board is sufficiently distinct from the legislative body of the borough as to prevent the anomaly of a borough appealing from a reversal by the court of its own ruling. In *Krinks' Case (McKeesport's Appeal)* 128 Pa. Superior Ct. 405, 194 A. 231 (affirmed in 332 Pa. 236, 2 A. 2d 700), the appeal to this court from the action of the court of common pleas was taken by the municipality. No question was raised there, however, as to its right to do so.

We are of the opinion that the borough has such an interest in this proceeding as to enable it to prosecute an appeal in an appellate court. The motion to quash the appeal is refused.

Previous to the filing of the petition the Perelmans had entered into an article of agreement to purchase the lot or piece of land now in question from W. Raymond Evans. Before the appeal was taken the Perelmans had acquired the legal title so that they now are the sole owners thereof. The lot in question, which lies in the Borough of Yeadon, is in a block that is bounded on the west by Church Lane, on the north by Myra Avenue, on the east by Holly Road, and on the south by Baily Road. It has a frontage on the west side of Holly Road of 180 feet, extends back toward Church Lane a distance of 122½ feet, and was, when the proceeding started, in both B residence and C business districts. The line separating the two districts is parallel to Holly Road and Church Lane. The entire frontage of the lot to a depth of 95 feet is in the residence district, and the rear 27½ feet are in the business district. Immediately west of a portion of this 27½ feet of land is the Yeadon Theatre owned by the Perelmans, which has a frontage of approximately 99 feet on the eastern side of Church Lane. The land on the eastern side of Holly Road, directly opposite the lot in question, is in the class B resi-

dence district, and erected thereon are some 20 semi-detached residences.

On March 13, 1929, the borough passed zoning ordinance No. 230. It provides that buildings in B residence district "may be used for any of the following purposes and for no other." The erection of twin or semi-detached dwellings and apartment houses is permitted together with the use of property for purposes that are customarily incident thereto and not seriously detrimental to a residential neighborhood. Certain limitations were imposed covering the size of the buildings, the set back, construction of porches, baywindows, etc. None of the express purposes allowed, however, includes the use of a lot for an automobile parking place.

The petition filed December 28, 1937, requested that a variance be granted under the zoning ordinance so as to permit the 180 feet fronting on Holly Road and extending back therefrom 95 feet in the B residence district to be used as a parking lot. After hearing the board stated that 80% of the residents within the immediate neighborhood of the property were opposed to granting any exception to the zoning ordinance and refused the petition.

On March 18, 1938, the owners of the lot applied to the court of common pleas for leave to appeal nunc pro tunc. The court allowed the appeal, and directed the board to file a return to the petition for appeal. This was done and on June 8, 1938 the court referred the matter back to the board, directing it to take further testimony and make further findings of fact. The board held two hearings, took a large amount of testimony, and returned its report refusing to allow the variance, stating: "1st. We do not believe the granting of this variance would add to the health, safety, morals or general welfare of the citizens of Yeadon, as a whole. We do believe, however, the houses now on Holly Road would not be as desirable for residence purposes, as they

now are, were this variance granted. These houses were erected since the Zoning Ordinance was in force and purchasers thereof, believed they had the protection of this Zoning Ordinance to keep Holly Road as a "B" residence District. 2d. Mr. P. Friedman, representing the petitioner, testified that failure to obtain the use of this ground for parking purposes would not have any detrimental effect upon the business of the Yeadon Theatre and no unnecessary hardship would be inflicted upon the petitioner, were this variance not granted."

It was agreed by stipulation of the attorneys for the parties that the court should determine this appeal upon the testimony taken by the board. The court filed an opinion wherein it set aside the findings of the board and made 27 findings of fact and 17 conclusions of law and held that the board's ruling was arbitrary, unreasonable, not sustained by the evidence, without foundation of law, and entered an order granting petitioners the right to permit the general public to use the premises, without charge, for parking of automobiles. It expressly upheld, however, the constitutionality of the ordinance.

"Factual questions which relate to the nature and use of premises are primarily within the province of the administrative officials and boards appointed to enforce the provisions of zoning laws": *Krinks' Case (McKeesport's Appeal)* supra. The decision of an administrative board having jurisdiction to determine the questions of fact submitted for its consideration, is entitled to great weight and, as stated in *Jennings' Appeal,* 330 Pa. 154, 159, 198 A. 621, "should be set aside only for substantial reasons."

It has been held frequently that where an official body in its administrative capacity has acted upon a matter properly before it the court should not reverse except where there is a manifest and flagrant abuse of discretion. See *Liggett's Petition,* 291 Pa. 109, 139 A. 619; *Valicenti's Appeal,* 298 Pa. 276, 148 A. 308; and *Fleming*

*v. Prospect Park Board of Adjustment,* 318 Pa. 582, 178 A. 813.

The burden rested upon the petitioners in their appeal to the court below to show affirmatively that the board abused its discretion, as, for example, in that there was not substantial evidence to support its findings or that its ruling was erroneous as a matter of law. There was no evidence that the ordinance in question, which had been in force since 1929, worked an undue hardship on the petitioners, in fact, it was testified by Mr. Friedman, their representative, that refusal of the application would not result in any financial loss to them as their patrons would attend the theatre and park their cars elsewhere.

Section 7 of the Act of 1923, supra, 53 PS §15737, specifically enumerates one of the powers granted as follows: "The Board of Adjustment shall have the following powers: ...... (3) To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done ......" It is thus apparent that the principal duty of the board of adjustment is to decide factual matters.

If a court can set aside the findings of the board refusing or granting a variance, which are supported by substantial evidence and not otherwise erroneous as a matter of law, and decide the factual question itself, the board will become more or less a useless formality. If the board's determination is shown to be arbitrary and contrary to the weight of the evidence the court is authorized and should make its own ruling: *Gilfillan's Permit,* 291 Pa. 358, 363, 140 A. 136; *Junge's Appeal (No. 1),* 89 Pa. Superior Ct. 543.

A review of the record brings us to the conclusion that

there was ample evidence to support the findings of the board and that it was not guilty of abuse of discretion. Upwards of 20 owners of, or residents in, houses abutting on the opposite side of Holly Road from the parking lot, objected to the granting of the variance. Seven of the owners of these properties appeared before the board and testified that they purchased their homes in this residential district relying upon the protection afforded by the ordinance, and that the noise of starting motors, flashing of lights, blowing of horns, dust, dirt and cinders with which the Perelmans had covered the lot, interfered with sleep and materially depreciated the value of their residences.

The chief burgess of the Borough of Yeadon expressed his opposition to granting a variance, not only because it would depreciate the value of the properties generally for residential use in that district, but the parking of cars on the lot would prevent fire apparatus from reaching the theatre in the event of a fire, thereby creating a fire hazard.

A number of witnesses were called by the petitioners, including the manager of the theatre, two tenants who lived in houses on Holly Road, the fire chief, certain fire officials in neighboring districts, and others who stated that water had accumulated and weeds had grown on the vacant ground. They expressed the opinion that the variance would benefit the entire community, chiefly because it would relieve parking congestion on the streets, which would reduce the fire hazard. The petitioners failed to show, however, any depreciation of their property by reason of the enforcement of the ordinance that warranted the court's setting aside the board's finding on this ground.

The record shows substantial difference of opinion on the questions presented to the board, but there was not such a preponderance of evidence favoring the variance that the refusal to grant it could be said to warrant the court's findings and conclusions. The issue before the

board was one of fact and its finding that the interest of the community required a refusal of the variance is not shown to be palpably erroneous. Especially is this true when we consider that a parking lot within a residential district may rise to nuisance proportions. In *Todd et al v. Sablosky et al.*, 339 Pa. 504, 15 A. 2d 677, the court said (p. 511) : "However, we are satisfied upon careful examination of the record and consideration of the usual incidents of the operation of such enterprises, that the parking lot would tend to injuriously affect the health and comfort of plaintiffs. The noise of motors starting and running in low gear, and blowing of horns and the reflection of bright headlights after dark would be offensive to the residents of the neighborhood, and these disturbances could not be eliminated by even the most careful management."

We are all of the opinion that the court below erred in overruling the board on a pure question of fact.

The order of the court is reversed, and the appellees are directed to pay the costs.