## Devereux Foundation, Inc., Zoning Case.

Argued January 10, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused April 9, 1945.

*George M. Henry,* for appellant.

*J. Paul MacElree,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, March 20, 1945:

We are here called upon to deal with a type of controversy in which two interests, each in itself legitimate and wholly commendable, come into conflict merely by reason of the proximity of their locations. The one interest is that of a school devoted to the education of men-

tally deficient, weak and abnormal children, and the other that of the inhabitants of a fine residential suburban section who oppose the housing therein of the pupils of such an institution.

The Devereux School, begun in 1918, was incorporated in 1938 as a non-profit corporation of the first class under the title of "The Devereux Foundation, Inc." for the purpose of "studying, treating, engaging in and carrying on research and educational work in connection with functional and nervous disorders and for the educating, developing, and advancing of boys and girls of any age under required direction in addition to their intellectual and vocational needs along psychological and psychiatric lines, . . ."

The school now has a staff of 74 teachers and an enrollment of 366 pupils. In 1939 it purchased a large residential property in Devon, Easttown Township, Chester County, containing approximately 14 acres of land. This property, known as the "Academy", is used by it as a girls' dormitory and for other purposes.

On August 6, 1940, Easttown Township, in pursuance of the authority granted by the Act of July 1, 1937, P. L. 2624, adopted a zoning ordinance under which the "Academy" was included within an "A residence District"; however, as this property was already in use by the Foundation, it was not affected by the restrictions imposed by the ordinance. The ordinance provided that in an "A residence District" a building might be used, inter alia, for an "educational or religious use, including dormitory of an educational institution, but excluding cemeteries, hospital, homes, sanitarium, correctional institution or structure or other place for accommodating the insane or other persons mentally deficient, weak or abnormal, except as provided in Article X." Article X, thus referred to, provided that the Board of Adjustment should have the power ". . . (b) To hear and decide special exceptions to the terms of this Ordinance in such cases as are herein expressly provided for, in

harmony with the general purpose and intent of this Ordinance, with power to impose appropriate conditions and safeguards. (c) To authorize, upon appeal, in specific cases, such variance from the terms of this Ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this Ordinance will result in unnecessary hardship, and so that the spirit of this Ordinance shall be observed and substantial justice done."

In 1943 the Foundation purchased an additional tract known as the "Ilsley" property, consisting of a private residence and 4 acres of land, all included within the same road boundaries as the "Academy" and the same "A residence District" under the ordinance. The Foundation intended to use this property, not for educational work, but as a dormitory for boys. It applied for a certificate of occupancy, which application was denied by the Zoning Administrative Officer of the township. Upon appeal to the Board of Adjustment that body, after hearing testimony, found that the contemplated use of the property was a violation of the terms of the ordinance but that "the circumstances of this case warrant the granting of an exception which is hereby allowed," and accordingly directed that an occupancy permit be issued. Thereupon residents of the District who had appeared before the Board of Adjustment in opposition to the application appealed to the Court of Common Pleas of Chester County. The court supported the conclusion of the Board that the proposed use of the property was prohibited by the ordinance, but overruled the action of the Board in granting an exception. The Foundation now appeals from that order of the court.

As above stated, the ordinance sanctions an educational use, "including dormitory of an educational institution", but bars a "structure or other place for accommodating . . . persons mentally deficient, weak or abnormal." That the Devereux Foundation is an educa-

tional institution, and a very splendid one, is admitted by the appellees, and therefore a dormitory for its pupils would seem to come within the express inclusion of the ordinance. On the other hand, both the Board of Adjustment and the Court of Common Pleas found as a fact that the pupils of the Foundation who would live in the dormitory were "mentally deficient, weak or abnormal" persons, and in that finding we concur in spite of the subtle distinctions sought to be made by appellant between various degrees of mentality, normal, abnormal and sub-normal; the testimony indicates that the students include neurotics, epileptics and other victims of psychopathic disorders. Nor can it be doubted that the proposed dormitory, whatever may be said as to others of the school buildings, is a place for "accommodating" its occupants, since its sole purpose is to supply them with shelter, ease and comfort in the same manner as a hotel is said to "accommodate" its patrons. The fact that they may be receiving education on an adjoining tract of land belonging to the Foundation is, in this regard, wholly immaterial. Reconciling, then, the inclusive and the exclusive provisions of the ordinance, the only reasonable conclusion to be drawn is that the "dormitory of an educational institution" must have been intended to refer to such a dormitory as is devoted to the accommodation of normal students ordinarily attending the usual type of educational institutions, and that the exclusion of a structure for accommodating mentally deficient or abnormal persons was intended to override the permissive provision if, as here, the two came into conflict. The Foundation contends that this interpretation creates an invalid discrimination between a dormitory of this school and those of other schools, public and private, all of which probably contain some pupils who are mentally retarded or deficient. But as Mr. Justice HOLMES so frequently pointed out, most of the distinctions of the law are distinctions of degree, and there is a marked practical difference, justifying a

legal differentiation, between the dormitory of a school all of whose occupants are, from the standpoint of mentality, of the problem type which it is the very purpose and function of the institution to serve, and the dormitory of a school in which only a negligible percentage of the occupants are mentally sub-normal.

We come to the question whether the Board of Adjustment was warranted in granting what it terms an "exception", and on that basis permitting the issuance of the certificate of occupancy requested by the Foundation. The Act of July 1, 1937, P. L. 2624, which authorizes townships of the second class to adopt and enforce zoning ordinances, provides in Section 7 that the board of township supervisors may appoint a board of adjustment and may provide that "said board of adjustment may in appropriate cases, and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with the general or specific rules therein contained." As far as the terms of the Easttown Township ordinance appear in the record there are no rules therein contained in accordance with which special exceptions may be made. An "exception" in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist. But zoning ordinances usually provide, as does the present one, for another kind of dispensation, also permitted by the statute, by which a "variance" from the terms of the ordinance may be authorized in cases where a literal enforcement of its provisions would result in unnecessary hardship. Presumably, therefore, it is such a variance which the Board of Adjustment intended here to authorize.

Was it justified in so doing? It was said in *Kerr's Appeal*, 294 Pa. 246, 253, 144 A. 81, 84: "The difficulties and hardships, which move the board of adjustment to depart from the strict letter of the ordinance, should be

substantial and of compelling force." And in *Valicenti's Appeal,* 298 Pa. 276, 283, 148 A. 308, 310, 311, it was said: "It is true that variations may be permitted, but only in cases of practical necessity, and for reasons that are 'substantial, serious and compelling'". To the same effect is *Jennings' Appeal,* 330 Pa. 154, 159, 160, 198 A. 621, 623. In *Junge's Appeal (No. 1),* 89 Pa. Superior Ct. 543, 546, the late, lamented Judge KELLER said: "The authority thus placed in the Board is not an arbitrary one. The discretion vested in the Board is subject to review if abused or not exercised in accordance with the provisions of the Act. The statute does not give the Board power to do whatever they feel inclined to, regardless of the provisions of the statute. . . . The strict letter of the ordinance may be departed from only where there are practical difficulties or unnecessary hardships in the way of carrying it out; and in such manner that the spirit of the ordinance may be observed, the public health, safety and general welfare secured and substantial justice done. No other considerations should enter into the decision." This case was cited, and the principle which it enunciated was followed, in Appeal of *Heman Johnson,* 93 Pa. Superior Ct. 599, and *Huebner v. Philadelphia Saving Fund Society,* 127 Pa. Superior Ct. 28, 192 A. 139. It is true that ordinarily the grant or the refusal by the Board of Adjustment of a variance from the terms of a zoning ordinance should not be reversed unless its action was "a manifest and flagrant abuse of discretion": *Jennings' Appeal,* 330 Pa. 154, 157, 198 A. 621, 622; *Perelman v. Yeadon Borough,* 144 Pa. Superior Ct. 5, 10, 18 A. 2d 438, 440. But we agree with the court below that in this case the Board of Adjustment did abuse its discretion in allowing a so-called "exception" or variance, for there was no evidence to support such a grant. It is of some significance that the Board did not state facts or advance reasons for its action. Mere hardship is not sufficient; there must be *unnecessary* hardship, and there is nothing in the record to indicate that

the Foundation will be subject to such hardship by denial of the right to use the Ilsley property as a dormitory for its pupils. It bought the property with full knowledge of the terms of the ordinance, and certainly the mere curtailment of its ambition to expand its work over forbidden territory is not an unnecessary hardship within the statutory meaning of that phrase; to hold otherwise would be to nullify the entire purpose and effect of the zoning regulations. Moreover, the power given by the statute and by the ordinance to authorize a variance is limited by the provision that it must be such "as will not be contrary to the public interest"; this presumably is intended to insure protection of the interests of that portion of the public which is affected by the variance, namely, the owners and occupants of the neighboring properties. The objections raised by the latter cannot be dismissed as capricious or unduly selfish. While it is true that the Foundation will, in any event, continue to operate its school on the "Academy" property, it is natural that the creation of a dormitory on the Ilsley tract should arouse added apprehension among the neighbors, for the close presence of persons who are below the normal standards of mental capacity and are subject to psychological and psychiatric aberrations not only constitutes a depressing factor calculated to interfere with the enjoyment of home life but even involves the potential danger of physical disturbances.

We do not believe that it was the intention of the legislature, nor of the township supervisors, to empower a board of adjustment to set at naught the zoning statute and ordinance under the guise of a variance. The power to authorize such a variance is to be sparingly exercised and only under peculiar and exceptional circumstances, for otherwise there would be little left of the zoning law to protect public rights; prospective purchasers of property would hesitate if confronted by a tribunal which could arbitrarily set aside the zoning provisions designed to establish standards of occupancy in the neigh-

borhood. Indeed, if such power were to be interpreted as a grant to the board of the right to amend or depart from the terms of the ordinance at its uncontrolled will and pleasure, it might well be challenged as being an unconstitutional delegation of legislative authority to a purely administrative tribunal.

Order affirmed; costs to be paid by appellant.

DISSENTING OPINION BY MR. JUSTICE JONES:

I am unable to agree with the conclusions reached by the majority of the court in this case. Because of the general public importance of the underlying principles involved, I deem it appropriate to state the reasons for my differing views.

The ordinance in question permits educational institutions and dormitories of educational institutions in a Class "A" Residence District. The property for which the occupancy permit in this case was sought is located in such a district.

Devereux Foundation, the applicant for the permit, is a non-profit corporation formed for the purpose quoted in the majority opinion. "That the Devereux Foundation is an educational institution, and a very splendid one, is admitted * * *." The children accepted by the school are, what is termed, "maladjusted",—a condition which may exhibit itself either emotionally or intellectually. The aim of the training is to fit the pupils for full participation in normal social, intellectual and gainful pursuits and activities. The work of the school has been attended by notable success. No children are accepted who need custodial care. Most of the pupils come and go, as they please, in their free time without chaperonage of anyone. None of them is confined and no bars are used for purposes of restraint. Devereux Foundation is not a correctional institution. It is, as everyone concedes, an educational institution. A former As-

sociate Superintendent [1] of the Philadelphia Public Schools testified that the same types of children who receive special education at Devereux are given similar training in the Philadelphia Public Schools, the only difference being that at Devereux the children board and live at the school.

Because the same paragraph of the ordinance which permits educational institutions and dormitories in connection therewith also excludes, inter alia, a "structure or other place for accommodating the insane or other persons mentally deficient, weak or abnormal," the learned court below held that the Zoning Board of Ad-

---

[1] Dr. Louis Nusbaum, President of The National Farm School at Doylestown, Pa., for forty-eight years with the Philadelphia public schools in capacities from grade teacher up to Associate Superintendent of Schools. He also testified "Without a doubt" that "Devereux School is an educational institution." Dr. Leonard L. Howeth, of the Friends Central School, Overbrook, Pa., was "most certainly" of the same opinion. Mr. Thomas S. Brown, Head of the Latin Department and Student Work Program at Westtown School, Westtown, Delaware County, Pa., said that "In [his] opinion Devereux is very eminently an educational institution." He also testified that "Devereux School does far more for those children than just" provide accommodations for them. Dr. John T. Madden, Dean of the School of Commerce of New York University, who was acquainted with the work at Devereux which he visited several times a year, said that he "regard[ed] Devereux as a very high type of special educational school". Miss Florentine Hatbusch, a clinical psychologist of the Department of Welfare at Harrisburg and a Visitor at the Devereux School, testified that "an institution accommodating feeble minded persons is a custodial institution" and that "the children at Devereux School * * * do not require custodial care." By letter addressed to the Zoning Board, which was received in evidence, Mr. Gibson Bell, of the Montgomery School (a Country Day School for Boys) at Wynnewood, Pa., stated that "the Devereux Schools are established to train the individual morally, intellectually, and physically" and expressed his regret at not being able to attend the hearing "to do [his] part in establishing the fact that unquestionably, according to the interpretation of the definition of what an educational institution is, the Devereux Schools come in that category." None of these witnesses had any material interest in or official connection with Devereux.

justment erred in granting Devereux's application for an occupancy permit. I think that was plainly error for any one of the three following reasons.

If the ordinance, here involved, is to be construed as denying to an owner the right to occupy a property for an educational use or as a dormitory of an educational institution on the ground that the pupils of the institution are mentally "weak" or "deficient", I think the criteria thus set are so vague, indefinite and uncertain as to admit of an arbitrary, capricious and unreasonably discriminatory exercise of the police power in violation of both State and Federal Constitutions.

The degree of mentality of the pupils of an educational institution alone cannot justifiably be made the basis for differentiating between a permissive and an excluded use of property by such institutions. Sanity is a relative term at best. But, when you come to mental weakness or deficiency, the shades of difference are so varying, and therefore so many, as to preclude either term from being used as an arbitrary norm. The exclusion by a zoning ordinance of one educational institution and the inclusion of another on the basis of the mentality of their respective pupils must rest upon some "rational relation to the health and safety of the community"; it must bear a "substantial relation to the public health, safety, morals or general welfare". See *Village of Euclid v. Ambler Realty Company,* 272 U. S. 365, 391-395, which established, in principle, the federal constitutionality of local zoning laws. In *White's Appeal,* 287 Pa. 259, 134 A. 409, which first sustained zoning ordinances as not being violative of the State Constitution, this Court said (p. 265) that "* * * all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people". A zoning regulation which discriminates outside that basis is unconstitutional. See *White's Appeal,* supra, at p. 268.

In order that mental weakness or deficiency of pupils may have bearing on the reason for discrimination be-

tween educational institutions within the contempla-
tion of the same zoning ordinance, there must be some-
thing in connection with the mental condition which
offers or fairly suggests a threat to the health, safety or
morals of the community. That I fail to find in this
record.

None of the adjoining property owners, who appeared
in protest of Devereux's application for an occupancy
permit for its lately acquired Ilsley property, testified
to a single instance where the Devereux pupils had cre-
ated any sort of a public disturbance or had breached
the peace in the five years prior to the hearing during
all of which time the school was occupying its immedi-
ately contiguous (Welsh) property which is not subject
to the ordinance. At most, the protesting property own-
ers objected to the fact that the Devereux pupils walked
along the roads of the locality, which they termed a
"depressing" sight, and to the possible embarrassment
of having to explain to their own children what was
"wrong" with the Devereux pupils should the former
see them and curiously inquire concerning them. None
of them testified to even any annoyance caused by the
presence of the Devereux pupils except for the protes-
tants' own unpleasant mental reactions. Such objections
constitute no more than aesthetic reasons which are not
a proper basis for discriminating restrictions in a zoning
ordinance. *White's Appeal,* supra, at p. 266; *Miller v.
Seaman,* 137 Pa. Superior Ct. 24, 31, 8 A. 2d 415.

In the second place, I fail to see wherein the ordi-
nance in terms makes any distinction between educa-
tional institutions or dormitories of educational insti-
tutions on the basis of the mentality of the pupils
or on any other basis. The ordinance provides, in part
here material, that "In an A Residence District * * *
A building may be * * * used * * * for any of the
following purposes and for no other: * * * 3. Educa-
tional or religious use, including dormitory of an educa-
tional institution, but excluding cemeteries, hospital,

homes, sanitarium, correctional institution or structure or other place for accommodating the insane or other persons mentally deficient, weak or abnormal, * * *."

Thus, the ordinance expressly permits the occupancy of a building for an educational use, including a dormitory in connection therewith, and then follows the exclusion of certain specified other uses. It is not apparent to me how the excluding clause can be thought to cut down the prior specific inclusion. In short, it is unreasonable to deduce from the ordinance an intention that would permit Devereux Foundation, for instance, to erect a building *anywhere* within the "A Residence District" *for educational purposes* and, yet, not allow it to house its pupils in that or any other building. The construction necessary in order to relate back to "dormitory of an educational institution" the subsequent exclusion of a "structure or other place for accommodating * * * persons mentally deficient, weak or abnormal", not only seems patently unwarranted but, even if admissible, it should be discarded because of the constitutional frailty which it would impute to the ordinance, as already indicated. As between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, a court's plain duty is to adopt that which will save the enactment. And, the rule is the same even where the necessity is no more than to avoid a serious doubt as to constitutionality. No extended citation of authority is needed to support that rule. See *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U. S. 1, 30, and cases there cited. Under our Statutory Construction Act of May 28, 1937, P. L. 1019, Section 52, 46 P.S. §552, in ascertaining legislative intent, there is a presumption "That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth"; see *Pennsylvania Company, etc., v. Scott,* 346 Pa. 13, 19, 29 A. 2d 328.

The zoning ordinance here involved, pursuant to authority conferred by Act of Assembly upon Second

Class Townships, empowers the Board of Adjustment "To authorize, upon appeal, in specific cases, such variance from the terms of this Ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this Ordinance will result in unnecessary hardship, and so that the spirit of this Ordinance shall be observed and substantial justice done."

The Zoning Administrative Officer of the Township having refused Devereux an occupancy permit for the Ilsley property, upon appeal by Devereux, the Board of Adjustment held that Devereux's occupancy of that property as a dormitory was prohibited by the ordinance but that "circumstances of this case warrant the granting of an exception" which the Board allowed.

The learned court below held that the granting of the exception constituted a "manifest and flagrant abuse of discretion". The Board had neglected to make specific findings of fact from the "circumstances" upon which it relied as warranting the exception. See *Appeal of Heman Johnson,* 93 Pa. Superior Ct. 599, 602. In obedience to the authority last above cited, the Board, of course, should have made findings in support of the "exception". But the fact that it did not do so does not seem to me to justify a reviewing court in saying in effect that the "circumstances" in the record *do not* warrant an "exception". The most the court below should have done, in the absence of formal findings by the Board, was to return the matter to the Board for such relevant findings as the record justifies. That fundamental function is committed by law to the local administrative body. Unless that be respected, a reviewing court will become the zoning administrator which is not its province. "If a court can * * * decide the factual question itself, the board will become more or less a useless formality." *Perelman v. Yeadon Borough Board of Adjustment,* 144 Pa. Superior Ct. 5, 11, 18 A. 2d 438.

The record contains plenty of evidence which to my mind would support findings justifying the variance.

Out of a block of land of approximately eighteen acres in suburban Easttown Township, Devereux, since 1939, has owned and occupied approximately fourteen acres, improved with a large modern dwelling (known as the Welsh property), which it uses for its school purposes. As that use antedates the effective date of the ordinance, it is not subject to the provisions of the ordinance. The remaining four acres, likewise improved with a large modern dwelling (known as the Ilsley property), was purchased in 1943 by Devereux which desires to use it as a dormitory in connection with its school on the Welsh property. The ordinance having been enacted in 1940, an occupancy permit for the use of the latterly acquired property was required in ordinary course.

The Welsh and Ilsley properties together form a single tract, which is bounded on its four sides by public roads. The whole of the property, thus enclosed by highways, is not traversed by any road for public use. Devereux can build all over the Welsh property (three-quarters of its whole tract) without let or hindrance from the zoning authorities, so long as the buildings are intended and used for school or incidental dormitory purposes. In fact, Devereux may even now, under the construction of the majority, use the Ilsley property for school purposes. The only restriction imposed is that it keep its dormitory facilities over the line on the Welsh property.

From a zoning aspect, how insignificant and unimportant becomes the fact that Devereux's pupils are broadly termed mentally "weak" and "deficient"! In the shadowy presence of that vague and indefinite reason for excluding Devereux's use of the Ilsley home as a dormitory, the hardship appears all the more "unnecessary" when Devereux has need of the dormitory for its boys and finds building construction out of the question because of costs, not to mention war-time restrictions on private building, of which a court may well take judicial notice.

I would reverse the order of the court below, however, on the ground that the ordinance does not prohibit the use of a building in an "A" Residence District as a dormitory in connection with an educational use, which is the use to which the Ilsley home would be put.