## Cummer et al. v. Narberth Borough Board of Adjustment

*John E. Flynn,* of *High, Swartz, Flynn & Roberts,* and *Howard H. Rapp,* of *Morgan, Lewis & Bockius,* for appellant.

*Henry A. Frye* and *George A. Purring,* for Narberth Board of Adjustment.

*Monroe H. Anders,* for W. Ross Osborne, intervening respondent.

KNIGHT, P. J., June 16, 1947.—On March 11, 1946, W. Ross Osborne made a request to the Board of Adjustment of the Borough of Narberth for a special exception to enable him to pursue his activities as a real estate broker, at his home, 1226 Montgomery Avenue. The applicant proposed to use the front room of his home as a real estate broker's office.

After proper notice by advertisement, a public hearing was held, at which some testimony was taken, and petitions objecting to the grant of the exception filed. The board rendered the following decision:

"It is the decision of the Board of Adjustment of the Borough of Narberth that a special exception should be granted to Mr. W. Ross Osborne, owner of property at 1226 Montgomery Avenue, to use a front room of that residence as a real estate office in the commonly accepted meaning of a room where conferences are held, where records are kept and where personal services are rendered, but that no exception should be granted as to the size and professional appearance of

the sign which he may use in order to identify his location to the public."

A number of aggrieved citizens and residents of Narberth then appealed to this court, and by stipulation, W. Ross Osborne was allowed to intervene as a party defendant.

Counsel representing all of the parties, by stipulation filed, have agreed upon the facts.

The burden is upon appellants to show, either that the board abused its discretion, or, that the decision is erroneous as a matter of law: Perelman et al. v. Board of Adjustment of Yeadon et al., 144 Pa. Superior Ct. 5 (1941).

Considering the commercial background of the use of the property in question, the proximity of other nonconforming uses, and the intended use, we cannot say that the board abused its discretion in granting permission to the intervenor to use the front room of his home as a real estate office. Appellants contend, however, that the board had no authority to grant the permission, and hence its decision is erroneous as a matter of law.

An examination of the Zoning Ordinance of the Borough of Narberth discloses that the board of adjustment has authority to grant special exceptions only in those cases in which the ordinance prohibits a use, unless special permission of the board is obtained, and this is not such a case.

See Section 7(2) of the Act of June 29, 1923, P. L. 957, sec. 901(b) of the Narberth Zoning Ordinance, and subdivision 19 of section 100 of the same.

"An 'exception in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist" (syllabus) : Devereux Foundation, Inc., Zoning Case, 351 Pa. 478 (1945).

Can the decision of the board be sustained as a "variance"?

The Act of 1923, supra, and the zoning ordinance, in almost identical language, provide that the board of adjustment shall have power:

"To authorize, upon appeal, in specific cases, such variance from 'the terms of the ("this") ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship' and so that the spirit of the ordinance shall be observed and substantial justice done."

Many and frequent variances will soon destroy any scheme of zoning, and the courts have held that it is only in cases where the public interest is not adversely affected and where a literal enforcement of the ordinance would result in real, substantial and unnecessary hardship, that a variance should be allowed.

The board made no findings of fact, and gave no reasons for its decision. Perhaps we cannot expect from a board of adjustment, usually composed of laymen, that same regard for orderly procedure, that same particularity in stating and supporting their decisions, and that same nicety in pleading, that we expect from a judicial tribunal.

The decision of the board in the present case has with it the presumption of regularity, and the board is presumed to have acted within its authority. We are therefore compelled to examine the stipulated facts to find if there is anything therein to support a variance.

Mr. Osborne knew when he purchased his home in 1945 that it was in R-1 and R-2 residence district, as zoned by the Narberth ordinance, and in residence districts business use was prohibited by the ordinance. This is not a case where a landowner finds himself confronted by a provision of a zoning ordinance which works severe and unnecessary hardship upon him, for instance where his lot is 49 feet wide and the ordinance requires a 50-foot lot to build on. Many real estate

brokers conduct their activities from their homes, but we believe the great majority, particularly in the suburban districts of Philadelphia, maintain their offices outside of their homes. No doubt it would be convenient to the applicant to have his office in his home, but the facts do not disclose that it would be a hardship to him, much less an unnecessary hardship, to be denied this privilege. "Mere hardship is not sufficient, there must be unnecessary hardship": Devereux Foundation, Inc., Zoning Case, 351 Pa. 478, 484. See also Junge's Appeal, No. 1, 89 Pa. Superior Ct. 543, and Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582.

After examining all of the evidence, and the stipulation of facts, we have come to the conclusion that there was no evidence upon which the board could lawfully exercise its discretionary power to grant a variance.

Counsel for the board of adjustment concede that the board had no authority to grant a special exception or variance to the applicant, but contend (1) that the decision of the board is proper because a real estate office is a "professional" office within the meaning and intent of the zoning ordinance, and (2) the use as a real estate office is a more restricted continuation of an existing nonconforming use.

Article III, sec. 301, of the Narberth Zoning Ordinance permits accessory use customarily incidental to any permitted use, and provides:

"The term 'accessory use' shall not include a business but shall include a professional office or studio and rooms for home occupations if located in a dwelling in which the practitioner resides, or in a building accessory thereto, if no goods are publicly displayed on the premises."

Is the occupation of a real estate broker a business or a profession?

Fifty years ago the occupation of a real estate broker was a business, and a cutthroat, dog-eat-dog business at that. Much has happened to the business in these 50 years. It has been declared by the courts as affected with a public interest; real estate brokers must now be licensed, and to secure a license the applicant must meet certain scholastic requirements, and be able to produce evidence of special knowledge of the subject, and also of applicant's moral fitness.

Real estate brokers have formed associations or boards, National, State and local: codes of ethics have been adopted, and are generally observed; the word "realtor" as applied to a licensed real estate broker is attaining, to a growing extent, the public recognition accorded to physician, lawyer or priest, as describing a specialized branch of human endeavor. Today the calling of a real estate broker has many of the attributes of a profession but we have not been able to find one case, nor has any been brought to our attention, in which the courts have held that a real estate broker is a professional person within the meaning of the zoning laws.

On the other hand, counsel for appellants have cited the following authorities to the contrary: Pennock v. Fuller (1879), 41 Mich. 153; Recht v. Graves (1939), 257 App. Div. 889, appeal denied, 281 N. Y. 886; Commonwealth ex rel. v. Fitler et al. (1892), 147 Pa. 288; Building Commissioner v. McManus (1928), 263 Mass. 270, holding that a mortician was engaged in a business and not a profession; Hasley's Appeal (1943), 151 Pa. Superior Ct. 192, holding that a nursing home constituted a business and not an accessory use; Bassett on Zoning (1940), 101; section 9, Real Estate Brokers License Act of May 1, 1929, P. L. 1216, wherein the broker is required to maintain a definite place of business.

In the face of this authority we hesitate to hold that the calling of a real estate broker has reached

the status of a profession within the meaning of the zoning law.

Counsel for the board contends, however, that under the ordinance a profession is given a wider meaning than one limited to what is generally termed the learned professions. Counsel points to the words "studio and rooms for home occupations" as implying a broader meaning to "profession" than we have given it.

We think "accessory use" as defined in the ordinance comprises two types of use. First, a professional office and, second, for home occupations, and it is in connection with the latter that studios and rooms may be used, as distinguished from an office. The calling of a real estate broker cannot by the most liberal interpretation be called a home occupation.

We have finally to consider whether the use of the house as a real estate office is a continuation of a nonconforming use. This requires some consideration of the history of the use of the property. Without detailing the various occupancies it can be said that the premises were occupied by nonconforming uses from 1930 to 1942.

On February 21, 1939, the board of adjustment granted permission to Mrs. Lois Umbsen to conduct an antique shop in the premises during the term of her lease. Mrs. Umbsen removed her antique shop to Ardmore in the year 1942 because of the war. She continued to live in the premises, however, until December 1945, when she sold them to W. Ross Osborne, the intervenor.

Section 1110 of the Narberth Zoning Ordinance of 1940 provides, inter alia, "if such non-conforming use is abandoned, any subsequent use shall be in conformity with the provisions of this Ordinance".

The question then arises whether the nonconforming use was abandoned by Mrs. Umbsen.

Abandonment is largely a matter of intention, and in the absence of any testimony by Mrs. Umbsen, we can only judge of her intentions by her actions.

The stipulation states that she moved her business to Ardmore because of the war, but there is no evidence that she intended to return her shop to 1226 Montgomery Avenue after the war was over. On the contrary, she did not move her business back after the war was over, but sold the premises to the intervenor. We can think of no more conclusive evidence of her intention to abandon 1226 Montgomery Avenue as an antique shop.

It is questionable if the board of adjustment had any authority to grant Mrs. Umbsen permission to conduct her antique shop, but assuming such use was a lawful use when the 1940 ordinance was passed (see section 1110), still it was only for the term of her lease. When she purchased the premises the lease was at an end.

We do not agree with counsel for the board and intervenor that the permission automatically applied to the changed conditions of ownership. We are therefore forced to conclude on the evidence and stated facts that the use of the premises as an antique shop was abandoned in 1942.

We have given this case considerable thought and attention, as the length of this opinion indicates. Some of the questions raised were new, at least to us, and some were important. After studying the briefs of counsel and the whole record we have come to the conclusion that the board of adjustment had no authority to grant a special exception or variance to the intervenor to conduct a real estate office in premises 1226 Montgomery Avenue, Narberth, and that intervenor must look for any relief to the borough council, which has the power to amend the zoning ordinance.

And now, June 16, 1947, the appeal is sustained and the order of the Board of Adjustment of the Borough of Narberth of April 16, 1946, granting a special exception to W. Ross Osborne, is set aside.