## Beck v. Zoning Board of Adjustment

*J. R. Breitinger*, for appellant.

*F. F. Truscott*, City solicitor, and *G. Coe Farrier*, Assistant city solicitor, for zoning board of adjustment.

*F. X. Hope, Jr.*, for intervenor.

ALESSANDRONI, J., September 26, 1949.—This is an appeal, by writ of certiorari, from a decision of the

zoning board of adjustment, granting a certificate of variance to the owner of premises 228-230 West Mentor Street, Philadelphia. The facts, which are not in dispute, disclose another example of the need for an intelligent, scientific revision of the zoning map of the City of Philadelphia as well as a more judicial administration of the ordinance.

Mentor Street from Second to Third Streets is classified as D-1 Residential on both sides of the street. Originally a tract of ground, having approximately a 90-foot front on Mentor Street, was improved by a dwelling and small buildings used by the owner as a wood planing mill, where he conducted a one-man shop fabricating screens and similar items. This use began in 1921, so that when the zoning ordinance became effective on August 10, 1933, it qualified as a nonconforming use. On July 28, 1937, the bureau of building inspection of the department of public safety condemned the structures as a result of which they were razed on January 15, 1938, and thereafter the premises continued as vacant ground.

In 1946 it appears that the then owner, Fred Metzler, was successful in securing a permit to erect a single story two-car *private* garage. His prior attempts to erect an automobile repair shop had been rebuffed. Subsequently on November 18, 1947, Metzler sold the remaining ground to the son of his employe and apparently retired from business. He did, however, permit the grantee and his family to continue the business, under his name, so that they have carried on the occupation of towing wrecks to the property and storing them for repair. It is clear that Metzler never intended to use his garage as a private one since he equipped it with a telephone having a business listing, and with flood lights to illuminate the adjoining lots where the wrecks have been and are being stored presently.

The present applicant is more candid. Permission is requested to erect a new one-story building to be used as a garage, and an automobile repair shop, including body and fender work, with the privilege of using any ground remaining vacant for the storage of automobiles and trucks awaiting repair.

The use permit was refused by the bureau of engineering, surveys and zoning because such use is not permitted in a D-1 Residential district. On appeal, the zoning board of adjustment, however, over the protests of neighboring property owners, issued a certificate of variance on the theory that the property had been devoted to a nonconforming use.

We are convinced that the zoning board erred in its decision. Section 4(4) of the zoning ordinance does permit the resumption of a nonconforming use that has been discontinued, if the new use is of the same class and not a lower one. The precise situation now before us is governed, however, by section 4(5) which provides that where a building containing a nonconforming use has been destroyed by fire or legally condemned, it may be reconstructed and used *for the same nonconforming* use if the building reconstruction is commenced within three years and carried on to completion without interruption. In this case, although we might have the same class of use, it admittedly is not the same use nor was any reconstruction commenced within three years of the condemnation.

The distinction in the ordinance is clear. Nonconforming uses are a thorn in the side of proper zoning. Provisions for such uses were necessary to sustain the constitutionality of the zoning acts, but they should not be perpetuated any longer than necessary. See Bassett on Zoning, pp. 105-109. Where a building is erected and the nonconforming use is discontinued, it is uneconomic and inequitable to the property owner

to prevent him from selling the premises to another user who will not conduct a more offensive occupation therein. To provide otherwise would result in confiscation and would force the owner to sustain a substantial loss. At the same time surrounding property owners, having endured the nonconforming use prior to and after the passage of the zoning law suffer no real damage by having a different use of the same class introduced into the neighborhood. Hence the provisions of section 4(4) permitting a discontinuance and a resumption.

The equities, however, shift materially when the structure housing a nonconforming use is destroyed by fire or condemned. In such case, the protection afforded to the property owner permits him to continue the same business and allows him three years within which to start reconstruction. If he fails to take action within that time, it can be presumed that either his need or his desire are not so great as to require extending the privilege any longer. When a new structure is to be erected thereafter, the property owner must conform to the paramount purpose of zoning and build in accordance with the character of the neighborhood as defined by the zoning maps. Under such circumstances the difference in the value of unimproved land for the conforming and the nonconforming purpose cannot be very substantial. Hence the provisions of section 4(5). The propriety of a similar though more stringent provision in a zoning ordinance has been sustained. See Berberian Zoning Appeal, 351 Pa. 475.

Although counsel for the zoning board presented a discourse of the law at the hearing of the appeal, the brief which he asked permission to file has never been presented. We have examined, among others, the cases of Jennings' Appeal, 330 Pa. 154; Devereux Foundation, Inc., Zoning Case, 351 Pa. 478; Darling v. Zoning Board of Adjustment et al., 357 Pa. 428; Ventresca v.

Exley et al., 358 Pa. 98, and Triolo et al. v. Exley et al., 358 Pa. 555. The Triolo case is clearly distinguishable since the applicant purchased a building that was still equipped with the hooks and rails used in the abattoir, the nonconforming use. The case did not involve vacant ground resulting from condemnation or destruction by fire of the building which provided the history of a nonconforming use. Although there had been a fire, it apparently did not affect the building materially and thereafter it was employed continuously for nonconforming uses. Secondly, the applicant has not established the hardship requirement set forth in the Ventresca case, nor did the board purport to rest its finding upon such basis. This application was filed before the applicant acquired legal title to the vacant ground, which he "could not possibly have purchased in reliance on any preconceived ability to obtain a variance." Here, too, the proposed use is industrial, and cannot be permitted in residential districts except by a variance granted under the conditions prescribed by the statute.

We have commented upon the need for a revision of the zoning map. It seems probable that such a revision would reduce the classification of this area to substantially less than "D-1 Residential" and permit the highest and best use of this land. Neither this court nor the board, which is merely an administrative tribunal, however, can override both the statute and the ordinance, and by indirection, usurp the legislative power of city council by changing a residential district into a commercial or industrial one. It may be that the antiquated zoning map creates a hardship by making the premises unfit for the prescribed use because of the changed condition of the neighborhood, and unavailable for a use in consonance therewith. The record, however, does not adequately support such a finding of virtual confiscation.

The certiorari issued out of this court directed the zoning board of adjustment to send up its record in this proceeding. At the hearing, counsel for the board suggested the record was delivered to the prothonotary. At that time a search by an officer of this court was made in the office of the prothonotary and the record was not found. Subsequent searches have proven futile. Although counsel are not in disagreement as to any of the facts contained therein, the board is directed to produce the record forthwith and in the future to comply strictly with the command contained in the process issued by this court.

*Order*

And now, to wit, September 26, 1949, the appeal is sustained, and the decision of the zoning board of adjustment is reversed and the board is directed to revoke the certificate of variance granted by it and to cause to be revoked any use registration permits granted pursuant thereto.