# Koelle-Greenwood Co. v. Zoning Board of Adjustment

*Saul, Ewing, Remick & Saul,* for appellant.

*Abraham L. Freedman,* City Solicitor, and *Richard H. Markowitz,* Assistant City Solicitor, for zoning board of adjustment.

KUN, P. J., December 30, 1955.—The matter comes before the court on two appeals from separate decisions of the zoning board of adjustment. One decision was the refusal of the board to approve a permit for the use of an entire lot, with a depth of 250 feet, for the display and sale of used automobiles. The other decision was the refusal of the board to permit the use of 150 feet of the lot, fronting on Chelten Avenue, for the same purpose. By appropriate court orders, the second appeal was transferred to this court in which the first appeal had been filed.

Appellant, Koelle-Greenwood Company, has been in business as an automobile dealer in Germantown for almost 40 years. Its principal place of business is 161 West Chelten Avenue, where it has a showroom for the display and sale of new cars in its own building. For about 30 years the company has leased the lot adjacent to its building for the storage and sale of used cars, almost all of which are received in trade in the sale of new cars. Appellant is not a "used car dealer", but simply disposes of used cars received as part of the purchase price of new cars, which is the universal practice in the business.

Appellant was notified that the used car lot adjacent to its building had been sold and that it would have to vacate at any time on 30 days' notice when the new owner of the lot was ready to build. Accordingly, appellant had to obtain another lot in the immediate neighborhood to be used, if necessary, as a used car lot. It purchased a lot, 234-36 West Chelten Avenue, in the block immediately west of its principal place of business, and in 1954 was granted the necessary permits and certificates by the zoning board to use the lot for private parking of automobiles. As shown by the application and permits introduced in evidence at the hearing on these appeals, the use contemplated was

the private parking of cars owned by the company and its employes and would, of course, include used cars received by the company in the course of its business.

When appellant contemplated using the lot for the display and sale of used cars, it was advised by city officials that it must obtain new zoning permits. A proper application was made, the permit was refused by the zoning board and appellant requested a hearing before the board on the basis that it would use only 150 feet of the lot, fronting on Chelten Avenue, for such purpose, although the lot it purchased ran to a depth of 250 feet where it met the rear of lots fronting on the next street. Another hearing was granted, but the board still refused to approve the permits and the second appeal followed.

In the findings of fact and conclusions of law filed by the zoning board and certified to the court as part of the record in the case, it was said that, since the application was for use of the premises as a used car lot, it must be referred to the zoning board in accordance with section 26(6) of the Philadelphia Zoning Ordinance. In the second conclusion of law, it was stated that, since the application was for a certificate of exception, the question of hardship was in no wise considered by the board in arriving at its decision. The third conclusion of law stated that the proposed use would be contrary to public interest on the grounds there stated.

Under the general provisions (section 26) of the Philadelphia Zoning Ordinance as approved by the mayor on August 10, 1933, and later amended, is included subsection (6), as follows:

"(6) OPEN AIR PARKING OF AUTOMOBILES. Open air parking of automobiles shall not be permitted in 'AA', 'A' or 'B' Residential Districts, and in any other residential or commercial district shall require a Board of Adjustment certificate as hereinafter pro-

vided. Open air parking of automobiles under no circumstances shall constitute a reason for permitting the erection of a garage or other building nor for the establishment of a Trailer Camp or the institution of any other use."

The certificate referred to is provided for under section 29, permits and certificates, subsection (5) as follows:

"(5) CERTIFICATES. When specifically required, a Board of Adjustment certificate may be issued by the Board after public hearings, held after due notice and publication of the time, place and purpose of the hearing. All costs, if any, in connection with advertising hearings to be borne by applicant."

As stated, appellant early in 1954 complied with these provisions of the ordinance and obtained the necessary certificate for the private parking of cars owned by the company and its employes. Such cars naturally would include those received by it in trade, and held by it for resale. The sale of used cars taken in trade is necessarily incidental to the sale of new cars, and as was brought out in the hearing in this case, an automobile dealer selling new cars, unless he took used cars in trade and sold them, could not stay in business.

Both the main location of appellant, at 161 West Chelten Avenue, adjoining which it has operated a used car lot for many years (which it must give up) and the new lot in question at 234-36 West Chelten Avenue, are zoned "A" commercial and among the specific uses permitted in such a district, under section 16(22) of the Zoning Ordinance is the "Sale and storage of goods, merchandise and commodities in stores or showrooms for sale on the premises at retail." Also among the specific uses permitted in such a district, under section 16(27) of the ordinance are "Ac-

cessory uses customarily incidental" . . . to primary uses. It is quite clear that the Zoning Ordinance gives appellant the right to operate in an "A" commercial district an automobile selling agency and in connection therewith, since it has already obtained the certificate required for open air parking of automobiles, the right to operate an open air lot for the storage, exhibition and sale of used cars taken in trade on the sale of new cars. Although section 26(6) of the ordinance, quoted above, provides that under no circumstances shall the open air parking of automobiles constitute a reason for the institution of any other use, such provision means merely that any other use of the premises in question must be permitted under other provisions of the ordinance. In the present case, the proposed use, the display and sale of used cars, is clearly permitted in an "A" commercial district, and is a lawful use of the property.

The board's conclusions of law were to the effect that the proposed use would be offensive to the neighbors because of dust and dirt, glare of lights into their homes and the noise. Only two protestants appeared at the hearing before the board. It is the rear of their properties which meets the extreme rear of appellant's lot at its full depth of 250 feet. However, it was stipulated at the hearing before the court that the lot would be used only to a depth of 150 feet from Chelten Avenue, and that any part of the lot used for the parking of automobiles would be given a hard top surface. As to the glare of lights, it was made quite clear before the court that the lights, all of which were shown on the plan submitted at the time the certificate for private parking was issued, and placed exactly where the city authorities directed them to be placed, are sheltered directional lights, directed to shine on the ground where the cars are located and could not possibly shine

into the homes of the two protestants, whose homes actually front on the next street and only the rear of their lots touch the extreme rear of the 250 foot lot purchased by appellant.

It is to be noted again that, by stipulation, appellant will use this lot fronting, as stated, on Chelten Avenue only to a depth of 150 feet. Chelten Avenue is a highly commercial area and obviously so lighted. As to noise, there is no evidence that there would be any more noise than is reasonable and customary in the operation of such use. As against the objections of the two protestants, who appeared at the hearing before the board but not before the court, must be considered the letters in evidence of the Community Council of Germantown and the Business Men's Association of Germantown, both of which organizations approved the proposed use of the lot. It is evident, therefore, that there is no basis in the record for the finding of the board that "substantial neigborhood protest" exists. The protest of the two appeared before the board, who live on a street considerably more than 250 feet back of Chelten Avenue, an active business thoroughfare, is not at all reasonable.

Likewise, there is no basis for the finding that the proposed use would be contrary to the public interest, as affecting the health, morals, safety and general welfare of the immediate neighborhood. This catch-all phrase has little meaning unless there is some rational basis therefor. In view of the evidence that there are a number of used car lots already in operation in the immediate neighborhood (three used car lots in the very block in which appellant's lot is located, and two others in the adjoining block) the generalization can have no application. The denial of the permit to appellant in these circumstances appears to be discriminatory and not supportable on any sound basis of fact or in law.

We find also that the board's reference to the application as being one for a certificate of "exception" so that they did not consider the question of hardship, is due to a misconception. A careful examination of the Zoning Ordinance will show that after each section relating to the various districts, whether residential, commercial, industrial or least restricted, appears a separate section relating to the rules and exceptions for the district concerned. Section 20 sets forth the rules and exceptions relating to commercial districts, and none of the exceptions there set forth are involved in the present matter. The provision relating to open air parking appears in the general provisions (section 26) of the Zoning Ordinance, applicable to *all* districts and requiring a board of adjustment certificate, later referred to in section 29(6). In the latter provision, the certificate is called simply a "Board of Adjustment certificate".

Nowhere in the ordinance is any provision made for the standards by which the board is to be guided in granting or denying a certificate for open air parking. However, in the matter of exceptions, covered in the sections specifically relating to exceptions, certain standards are set up to guide the board in granting such exceptions. As stated in Devereux Foundation, Inc., Zoning Case, 351 Pa. 478, an "exception" in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist. No question of "exception" is involved in this case.

The board, in refusing to consider the question of hardship in connection with the proposed use, committed an error in law since, as stated above, no standards are provided to guide the board in connection with the open air parking certificate provision, under which the board purported to act. The board is evidently under the impression that it can only consider hardship to the applicant in connection with an appli-

cation for a variance from the terms of the ordinance. Clearly, it may consider hardship in a variance case (Devereux Foundation, supra), and it must follow, a fortiori, that it can consider hardship in connection with an open air parking certificate. It was brought out at the hearing before the board and the court that it would be an unnecessary hardship on Koelle-Greenwood, in business for almost 40 years in its present location, to be denied the use of the lot close to it, in the next block in the same "A" commercial zone, as a used car lot. In Katzin v. McShain, 371 Pa. 251, the lower court considered unnecessary hardship to the people of the neighborhood in connection with a parking certificate, and it must follow that unnecessary hardship to the applicant, upon failure to obtain a certificate, must also be considered. It is to be noted that in that case there were some 60 protesting home owners of the immediate neighborhood, and it was the hardship on them that was considered the controlling factor. There is no such situation in the case before us.

The appeal before us presents the clearest kind of a case of "hardship" in the refusal of the permit. It must be repeated that appellant has been in business at the location mentioned for 40 years, in connection with which it has had an adjoining lot under lease for 30 years. That lot has been sold and appellant has been obliged to purchase a lot in the next block, likewise zoned "A" commercial, to carry on its business. Without such an adjunct for the sale of used cars taken in trade in the sale of new cars, appellant could not continue in business. Similar lots are presently being operated in that very block. The refusal of the board to grant appellant the same privilege, was a clear abuse of discretion and its action must be reversed.

The appeal is sustained, the action of the board reversed, and it is directed to issue appellant the permit for which application was made.