## Palletz Appeal

*Ivan Michaelson Czap*, for petitioner.

*C. Clark Hodgson*, for intervenor.

*G. Coe Farrier*, assistant city solicitor, for zoning board of adjustment.

ALESSANDRONI, J., February 15, 1950.—Lionel Palletz, the beneficial owner of a piece of ground with the minor improvements thereon, situate at the southeast corner of Broad and Butler Streets, in the City of Philadelphia, filed a petition for writ of certiorari to the zoning board of adjustment upon its refusal to grant a use permit for a gasoline service station, alleging that the premises is zoned "B" Commercial and is presently being used as a parking lot; that for sometime prior to 1931 the property was used as a gasoline service station and that use continued until 1941 when

the economic effects of the recent war caused a limitation of motor vehicle travel and a scarcity of gasoline; that the property was thereafter used for its present purposes, the underground gasoline storage tanks remaining in place. It is further alleged that the department of building inspection, in 1930, issued a permit for the installation of the tanks, in 1931, a permit for the erection of the buildings required by a gasoline service station, and in 1937 a permit to alter the structures. Petitioner avers that on May 3, 1949, he applied for a permit to erect a modern gasoline service station, with restrooms and customary facilities, which permit was refused. An appeal was taken to the board of adjustment on June 28, 1949, which dismissed the appeal because of failure to comply with the requirement concerning side yards. The plans were amended by adding 16 feet to the frontage on Broad Street. A new application was made, which was also refused. The petition avers that the property will be improved; that the sum of $45,000 will be expended for construction; that a lease has been executed with the American Oil Company containing an option to purchase the property at $139,200, which is subject to the right to use the premises as a gasoline service station. It is also averred that the action of the zoning board is contrary to the ordinance permitting the resumption of nonconforming uses; that the reason given for the first refusal has been corrected; that there was no evidence to warrant any finding of fact against the proposed use; finally, that the board made no specific findings of fact upon which to base its refusal.

A return was made by the zoning board of adjustment joining issue on the material questions of law.

The Most Rev. J. Carroll McCormick, pastor of St. Stephen's Roman Catholic Parish, was granted permission to intervene. The intervenor is pastor of the parish which has a church and parochial school, con-

vent and rectory located on the northeast corner of Broad and Butler Streets and appeared as an objector at the hearing before the board of adjustment. His petition sets forth that he has supervision of the parochial buildings and is interested in the health, safety and welfare of the parishioners, including the children attending the parochial school.

Examination of the record returned in obedience to the writ of certiorari discloses that the application concerns a plot of ground with a frontage of 116 feet on Broad Street, and a depth of 155 feet on Butler Street. The present small frame building is to be removed and a modern gasoline service station is to be erected with three bays, an office and toilet rooms. It is stated that the present building, which is 8 by 8 feet will be replaced by a building 16 by 16 feet. It further appears from the record that the zoning board of adjustment considered this as an application of certificate of exception for a use requiring a board of adjustment certificate under the terms of the ordinance.

At the time of the hearing counsel for the zoning board of adjustment presented written findings of fact which purport to be the findings of the board, dated August 19, 1949. Admittedly these findings were not filed prior to the hearing and have been referred to by counsel for petitioner as "belated". The findings show that a hearing was had on August 16, 1949, and the board, after public hearing and personal investigation, ascertained that the proposed station would have two entrances on Butler Street located less than 50 feet from the church on the opposite side of the street, the distance from the curb of the proposed station to the building line of the church being 38 feet. The second finding of fact discloses that the proposed station would constitute an increase in the use of the premises and in the area to be occupied in excess of 25 percent

of the prior existing nonconforming use. For these two reasons it is stated two of the members of the board refused to authorize the issuance of a use registration permit. Two other members of the board voted in favor of issuing a certificate of exception because of the nonconforming use. The board concluded that in view of the Act of May 6, 1929, P. L. 1551, 53 PS §3829, which requires the concurring vote of four members of the board of adjustment to reverse any order or decision of an administrative official, or to decide in favor of applicant on any matter upon which it is required to pass, or to effect any variation, the board was obliged to refuse the certificate of exception.

At the hearing before this court, by agreement of counsel, no testimony was taken, but we received the statement of the pastor of St. Stephen's Roman Catholic Church concerning the number of persons who attend masses, being 6,000 in number, in addition to other activities, such as funerals and weddings. Approximately 1,150 children are enrolled in the parochial school and pass the proposed service station four times a day. Safety of these pedestrians is raised as an issue, as well as the attendant noise and fumes in operation of a station in close proximity to a church wherein services are conducted. We are further advised that a large representative group of parishioners from the neighborhood appeared at the zoning board of adjustment to protest the issuance of a permit. Petitioner called the attention of the court to 10 gasoline service stations located on Broad Street in close proximity to various churches.

Subsequent to the hearing of November 10, 1949, counsel, with the permission of the court, entered into a stipulation, dated December 22, 1949, which, it was agreed, would amend and enlarge the notes of testimony as though the evidence had been produced at the hearing. Counsel for the board of adjustment refused

to agree to any legal conclusions contained therein. From this stipulation it appears that this plot of ground was used by the Kolb Bakeries until December 9, 1929, when it was conveyed to the General Baking Company. The latter corporation conveyed title on December 5, 1945, to a straw man and on the same day the property was conveyed to petitioner's nominee, his mother, who executed a deed of trust to petitioner as beneficial owner. The consideration for the conveyance of December 5, 1945, was $130,000. The general neighborhood is commercial and is close to the juncture of Germantown and Erie Avenues and Broad Street. The area is zoned "B" Commercial. The use of the property as a bakery was discontinued in 1930 when the buildings were demolished, and in the same year two gasoline storage tanks were placed underground and pumps were erected for dispensing of gasoline. From that time until June 30, 1941, the property was continuously used as a gasoline service station under various tenants with the sole exception of a few months in 1931 when a portion of the property was used as a miniature golf course. From 1930, as well as for sometime prior thereto, there have been two driveways providing exits from the premises to Butler Street east of Broad, as well as two driveways providing access to Broad Street. In 1930 a small office building, one story in height, measuring 10 feet by 14 feet, and a building of metal construction, measuring 20 feet by 10 feet and one story in height, used for lubricating, greasing and servicing of cars, were erected. Sometime thereafter the metal building was demolished. Prior to the passage of the zoning ordinance on August 10, 1933, the bureau of building inspection issued a permit to erect the service station facilities and in 1937 another permit was issued for the alteration of these facilities. The latter permit required a certificate of exception which was issued,

together with a zoning permit and a use registration permit. The gasoline storage tanks remained underground and the driveways have not been changed, although the pumps and the islands erected above the ground were removed in 1941. Under the proposed use the driveways on Butler Street will be widened to 30 feet each and the new buildings, which will include facilities for lubricating and washing, will be erected on a larger scale, being 20 feet by 53 feet, 7¾ inches. The original application of this petitioner was refused on June 28, 1949, because of the failure to comply with the requirement of the ordinance as to side yards. By adding an additional 16 feet to the Broad Street frontage, the side-yard requirement was met and the zoning division approved the application and referred it to the zoning board of adjustment, as it was required to do under section 16 (32) of the zoning ordinance. The action of the zoning board, as hereinbefore set forth in the "belated findings of fact", was taken on August 19, 1949, without assigning any reasons or filing any findings of fact at that time. Petitioner is a real estate broker and manager of properties, and has been acquainted with the premises and its uses at least for the past 21 years. It is agreed that the discontinuance of the use as a gasoline service station was the result of the economic effects of the war and that petitioner purchased the property with the intention of using it for that purpose, and finally succeeded in signing a lease with the American Oil Company, subject to the approval of that use. The lease is for a period of 10 years and 4 months, beginning September 1, 1949, rental payments to begin 60 days after the permits are issued by the zoning board. The total annual rental will be $9,236.80, with an option to purchase at any time during the term of the lease. We will hereinafter discuss the legal effects of financial hardship. It is also agreed

that there are 10 corners on Broad Street which have gasoline stations near churches and that one block north of the premises, at Broad and Pike Streets, there is a gasoline service station operated by the Socony-Vacuum Oil Company. The materiality of that fact will also be considered.

We have recited the facts in great detail because we are of the opinion that the factual situation is somewhat unique, and for the further reason that it is apparent that the zoning board of adjustment is somewhat confused. It is not surprising that such confusion has arise in view of the general mistake of using the technical terms "exception" and "variance" interchangeably. Moreover, it appears that a fundamental confusion pervades the briefs submitted in the same respect. The ordinance itself, as applied to this particular factual situation, is not as specific as might be desired. To dispel some of the confusion initially, it is well to define the general issue before us.

Applicant, or petitioner, without question has a right to erect a gasoline service station. Our inquiry is as to how far he can go in this proposed use.

There is always present in these cases a fundamental conflict between the right of the individual property owner to use his land as he pleases, and the effort of the community to develop uses of land in an orderly fashion to promote the health, safety, morals and general welfare of the community: White's Appeal, 287 Pa. 259. The Enabling Act of May 6, 1929, P. L. 1551, recognized the impossibility of applying a rigid ordinance and vested in the board of adjustment certain powers, including the disposition of special exceptions and the issuing of such variances "as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary

hardship, and so that the spirit of the ordinance shall be observed and substantial justice done".

The act further provides for the concurring vote of four members of the board to reverse any order, or to decide in favor of the applicant on any matter upon which it is required to pass under the ordinance or to effect any variation. A mere reading of the provision refutes the contention of petitioner that the failure of the board to act unanimously constitutes an approval of the application. The fact that the zoning official noted that the zoning was approved, merely indicated that a gasoline service station could be erected in a "B" Commercial Zone, if, and only if, the board of adjustment approved such a use and issued a certificate. The conduct of the board in failing to issue either a certificate of exception or a certificate of variance does not constitute a reversal under all the circumstances, of the order, decision or determination of the administrative officer.

Our next problem concerns the question of whether this is an application for a certificate of exception or a certificate of variance. The board of adjustment refused to issue a certificate of exception. The zoning law has recently been favored by an excellent definitive opinion in In re Devereux Foundation, Inc., Zoning Case, 351 Pa. 478. An "exception" has been defined as "one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist". A "variance", however, is "another kind of dispensation". The basic limitation on the issuance of a variance is found in the Enabling Act. The limitation requires that the variance "will not be contrary to the public interest", and, in addition, the existence of special conditions which make literal enforcement result in unnecessary hardship. Petitioner has not indicated whether he seeks a variance, an exception, or

a recognition of a nonconforming use, but, on the contrary, has interchanged all three factors in his theory of the case with utter abandon.

In Junge's Appeal (No. 1), 89 Pa. Superior Ct. 543, the court said that a change which will improve the selling or rental value is not sufficient grounds for a variance. Petitioner's difficulties must be "substantial, serious and of compelling force". Recently, in Ventresca v. Exley et al., 358 Pa. 98, 100, our Supreme Court took great pains to define the requirements upon which to predicate a finding of unnecessary hardship, although in Triolo et al. v. Exley et al., 358 Pa. 555, 558, we are instructed that the grant of a variance depends upon the circumstances in each particular case. We might also add that the existence of similar gasoline service stations along Broad Street in the vicinity of churches is evidence which "should not have been received, or, being received, should not have been considered, because the question whether such other variances were properly allowed would necessarily depend upon the circumstances in each case and would therefore have no bearing whatever upon the legality of the certificates involved in the present proceedings": Ventresca v. Exley, supra, at page 102. Before leaving the subject of unnecessary hardship, it is well to recognize that in view of the rights of petitioner under the provisions of the ordinance governing nonconforming uses, it is difficult to see how an unnecessary hardship can result and thereby require the issuance of a certificate of variance. In this respect an analogous situation is found in Kurman et al. v. Philadelphia Zoning Board of Adjustment et al., 351 Pa. 247.

An examination of the host of cases resulting from the refusal to grant certificates of variance discloses that in Crawford Zoning Case, 358 Pa. 636, our Supreme Court for the first time held that the zoning

board committed error in refusing or denying a variance. It is well settled that the board of adjustment should not be overruled in the absence of a manifest and flagrant abuse of discretion: Anderle Appeal, 350 Pa. 589; Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582; Valicenti's Appeal, 298 Pa. 276. Although this court has authority to hear additional evidence we believe that the fundamental determination of the question rests with the administrative agency and that power should not be usurped by the court. The purpose of receiving additional evidence is not to provide the court with a record upon which to exercise its discretion, but rather, to enable it to determine whether there is substantial evidence to support the decision of the zoning board of adjustment.

We are not unaware of the statement found in Gish et al. v. Exley et al., 153 Pa. Superior Ct. 653, 655, which would indicate that the court of common pleas is to exercise legal discretion and that the function of the appellate court is to determine whether there is any evidence to sustain the finding of fact by the court below.

Throughout almost two decades that have elapsed since the enactment of the ordinance, we have had an opportunity of reviewing the decisions of the board. It is true that particularly in the last decade and especially in the years following the cessation of recent hostilities, matters have come before this court with a record so meager that it is difficult to determine whether the action of the board is arbitrary and capricious, and it is well to be candid and practical and recognize the fact that this has resulted by necessity in the exercise of original discretion by the courts. If this surreptitious usurpation has occurred the fault lies with the zoning board of adjustment, albeit one in which culpability may be tempered by the volume of applications presented to it.

In examining the provisions of the zoning ordinance as it applies to the instant case to determine whether we are concerned with a variance or an exception, we find a hybrid situation. The use regulations governing a "B" Commercial district are found in section 17, which refers us to "A" Commercial districts governed by section 16, and in subsection 32(b) thereof we find that a public or commercial garage, or repair shop, or gas and oil service stations, are permitted, if, and only if, a board of adjustment certificate is obtained. We therefore are relegated to section 29(5), which states that when specially required, a board of adjustment certificate will be issued by the board after public hearing upon due notice. We further find, under section 31(6), that the board of adjustment has original jurisdiction, subject to appropriate conditions and safeguards, to make special exceptions or variances in the terms of the ordinance in harmony with its general purposes and intent and may issue a certificate of variance or permit whenever it is provided in the ordinance that such a certificate or permit is required.

It will be seen therefore that the classification of a district as commercial does not ipso facto give the property owner the right to operate a gasoline service station, and in that respect using the test of an exception as set forth in In re Devereux Foundation, Inc., supra, it might well be said that in all cases of this character a certificate of exception is required. On the other hand, it is clear that the city council intended to incorporate in section 20 all "Commercial District Rules and Exceptions". In the latter section, no mention is made of gasoline service stations. We feel that basically the distinction of special exceptions is a provision in the ordinance itself, wherein the existence of certain enumerated circumstances entitles the board in its discretion to grant an exception specifically pro-

vided for. It is for that reason that we have termed applications of this sort as hybrid in nature. It is our opinion that upon applications for a permit to operate gasoline service stations in commercial districts, the board is taking original jurisdiction, under section 31(6), and it is the practice for the zoning official to refer all such applications automatically to the board of adjustment.

The ordinance specifically provides, in section 16, subsec. 32(b), that a board of adjustment certificate for a gasoline service station shall not be granted where an entrance or exit is located within 50 feet of a property used for a school, church, hospital or public library. This prohibition was considered by the board of adjustment. It could have, if it deemed the evidence warranted such a conclusion, granted a certificate of variance from the literal enforcement of that provision. It could have, in the first instance, refused to grant the use permit, regardless of the proviso, since the board is vested with the power to authorize or refuse such uses in a commercial district, based upon sufficient evidence, in harmony with the spirit and intent, and general purposes of the ordinance.

The particular facts of the instant case, moreover, introduce the separate provisions governing nonconforming uses. A consideration of the rights vested in petitioner under those provisions, however, must be predicated upon such rights alone, and he cannot, as he has attempted to do throughout the argument in this case, use these provisions and the admitted existence of a nonconforming use as reasons for the granting of an exception or a variance. If he relies upon the prior existing nonconforming use, he is bound by the provisions of the ordinance with respect thereto, although, here again, we find no restriction upon the board of adjustment in recognizing a nonconforming

use and in granting a variance from any one or more of the provisions relating thereto for the benefit of a deserving applicant.

Section 4(6) of the ordinance which governs the extension of nonconforming uses prohibits additions which exceed 25 percent of the area of said building at the time of the approval of the ordinance. Subsection 7 governs the extension of nonconforming buildings for area and/or height extensions. The area of the proposed new building admittedly will be several hundredfold as large as the existing building. See Drake v. Zoning Board, 65 D. & C. 293. Petitioner contends that the restriction of section 16, subsec. 32(b), concerning the proximity of entrances to churches should be disregarded because of the circumstances surrounding the nonconforming use, and with equal agility attempts to extricate himself from the restrictions of section 4(6) and (7) by referring to the absence of such limitations under section 16, subsec. 32(b). We do not believe in the propriety of shifting for convenience. Petitioner is relegated to proceeding on the theory of a nonconforming use in which event he might secure a variance for unnecessary hardship, or proceeding without regard to the nonconforming use under section 16, subsec. 32(b), and asking for a variance if there is unnecessary hardship in the literal enforcement of that provision of the ordinance owing to special conditions. However, his application must be consistently pursued on one theory or the other.

Petitioner has relied upon Casper et al. v. Exley et al., 45 D. & C. 664, which involves the gasoline service station at Broad and Pike Streets. There are particular facts which clearly distinguish the cases. Merely the arbitrary zoning of school properties as residential and the attendant history of the premises at Broad and Pike Streets are sufficient to exclude

this as a controlling precedent. More important, however, was the practical exhaustion of the alternative remedy afforded to that property owner and his inability to have city council take any action for a period of more than one year.

Apparently a misconception was prevalent in the instant case insofar as the nature of the business activity is concerned. The neighborhood is clearly commercial. The operation of a gasoline service station in a commercial neighborhood is not a nuisance per se. The board may consider the effects of operating a filling station, along with all the other elements in the case, but they are not to consider themselves restricted by the law relating to nuisances: Franklin Street Methodist Episcopal Church v. Crystal Oil & Gas Co., 309 Pa. 357. See also Tornetta v. Township of Whitemarsh, 67 D. & C. 591; Cohen et ux. v. Abington Township Zoning Board of Adjustment, 43 D. & C. 362.

Since so many elements were introduced into this case, we have attempted to separate the material and operative factors from those which are not properly subjects for consideration. We have likewise attempted to analyze the applicable legal principles relating to this factual situation. By reason of petitioner's attack on the board's findings of fact as "belated", and because of all the attendant circumstances, we are of the opinion that the matter must be remanded to the board of adjustment so that a determination can be made by that administrative agency, exercising its own discretion, supported by its own findings of fact simultaneously filed of record. We do not wish to conclude that their action has been arbitrary, merely because the record does not properly show how and why the action was taken: Appeal of Heman Johnson, 93 Pa. Superior Ct. 599, 602; Imperial Asphalt Corporation of Pennsylvania Zoning Case, 359 Pa. 402. We shall retain jurisdiction of the matter in the event

that any one of the parties is aggrieved by the decision of the board.

### Order

And now, to wit, February 15, 1950, the record is remanded to the zoning board of adjustment for further proceedings in accordance with the opinion filed herewith.