## Kovacs *v.* Ross Township Board of Adjustment (et al., Appellant).

Argued November 14, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ., (ARNOLD, J., absent).

*Gilbert E. Morcroft,* for applicant, appellant.

*David W. Craig,* with him *Moorhead & Knox,* for appellee.

*Paul W. Brandt* and *William W. Milnes,* for Board of Adjustment.

OPINION BY ROSS, J., March 17, 1953:

The Board of Adjustment of Ross Township, Allegheny County, granted an application for a zoning variance and issued a certificate of variance to John P. Stankovic. Charles Kovacs filed a petition for appeal from the decision of the Board in the County Court of Allegheny County. The court allowed the appeal and ordered that a writ of certiorari be issued, directed to the Board of Adjustment ordering it to certify to the court its record of the proceeding. The court below, after hearing, reversed the order of the Board of Adjustment and vacated the certificate of variance. This appeal was taken by the intervenor, John P. Stankovic.

The facts which gave rise to the present controversy may be summarized as follows: On November 28, 1949, Ross Township had enacted Zoning Ordinance No. 446. With respect to lots situate in a "B" residential district, Article VI, section 17 of the ordinance provides in part: "There shall be a front yard having a depth of not less than twenty-five (25) feet . . ." Section 3 of the ordinance defines a "front yard" as "A yard across the full width of the lot extending from the front line of the building to the front line of the lot".

On June 5, 1951, John P. Stankovic, appellant herein, applied for a building permit to erect a two-family nine-room house in a "B" residential district of Ross Township. The plan submitted by appellant showed the proposed home located entirely behind the 25-foot set-back line. On June 6, 1951, the building inspector issued a permit and appellant commenced construction on or about July 15, 1951.

In the latter part of July 1951, a Mrs. Ann Morrison, who resided in a house directly across the street from the lot upon which the appellant was building, noticed that the "footers" put in by appellant "were extended past the 25 ft. line". She testified: "I called Mr. Brunner [the building inspector] and told him about it. Mr. Brunner came out and told Mr. Stankovic that he would have to stay in line with the other buildings according to the ordinance. Mr. Stankovic told him that he was staying back and the portion projecting was going to be a porch." The plans submitted by appellant did not call for the erection of a porch.

Charles Kovacs, petitioner below and appellee here, whose home was adjacent to appellant's construction, testified that he too noticed that the appellant had placed his footer over the set-back line. Kovacs testified that he called the building inspector twice between July and September 1951 and that he spoke to Mr. Stankovic about the matter "three or four times". He stated further that he warned Stankovic that he was building too close to the street and "begged him to change it".

Appellant testified that after he poured the footer in July 1951 the building inspector looked at the location of the footers and "never told me nothing". Immediately after appellant had given this answer, his counsel elicited an affirmative answer to the following

question: "No steps were taken in any way, until autumn, when you heard from the Board of Construction. Previous to that time the building inspector said to go ahead?" The Board's eighth finding of fact was as follows: "8. The Building Inspector inspected the footer and approved the construction."

The appellant proceeded with the construction and there is in the record a stipulation to the effect that the building line was only 18 feet, 8 inches from the front property line. As the work progressed it became increasingly apparent that the multiple dwelling appellant was erecting would, when completed, bear little resemblance to the structure promised in the plan he submitted to obtain a building permit. The material divergence was the erection of three partially integral garages at the front of the house, the roof of which garages formed the floor of an open porch. It was these garages which were erected 6 feet, 4 inches too close to the front property line.

On September 23, 1951, the appellee wrote to the building inspector and again complained about appellant's violation of Ordinance No. 446. On October 29, 1951, appellee wrote a second letter to Mr. Brunner stating, inter alia: "We hereby appeal the granting of a building permit to John P. Stankovic. . . . We also appeal from your decision to allow the house to be built in violation of the zoning law. . . . This appeal would have been filed sooner, but you failed to answer my letter, which should have indicated to you that we expected some action by you. You ignored the letter as you ignored Mr. Stankovic's clear violation of the ordinances which control this case."

On November 3, 1951, the Board of Adjustment issued a "stop" order and held a hearing on November 8, 1951. At the time of the issuance of the "stop" order, appellant's home was, in his words, "Complete

finish except front slab and brick". On November 24, 1951, the Board ordered appellant to remove that portion of his building which lay over the set-back line. Stankovic appealed to the County Court, which court returned the matter to the Board on the ground that the appeal was not in proper form. Appellant then, for the first time, filed an application for variance together with a set of revised plans showing the building within 18 feet, 8 inches of the front property line. A hearing held on February 18, 1952 resulted in an order that a variance be granted. The appellee took an appeal to the County Court and again the matter was remanded, this time for a fuller hearing. The Board held a meeting on April 9, 1952, and on May 17, 1952 again granted the variance. Appellee took the matter to the County Court and that court vacated the certificate of variance.

Between the hearing of February 18, 1952 and the time when Kovacs took his first appeal to the County Court, a period of 19 days, the appellant put a concrete "slab" over that part of his house which extended beyond the front of the house and which lay over the set-back line. Further, appellant proceeded to complete the front of the house two weeks before the hearing of April 9, 1952, the hearing at which the issue was supposed to be whether appellant was entitled to a variance or whether compliance with the ordinance would be insisted upon.

The testimony of appellant's "hardship" witness, Vaclac Klimek, a bricklayer with 30 years' experience in that trade, was to the effect that it would cost $3,-000 to remove that portion of appellant's front wall which extends over the set-back line. On cross-examination of the witness this testimony appears: "Q. If the projection would be removed, there is no support to the front wall of the house now? A. I don't think

it would be safe if you take the slab off because the wall is too high." A second witness, A. J. Nard, testified that at the time of the hearing he had been a "builder" for 2 years and had been "in real estate" for 4½ years. He stated that he examined appellant's structure before the concrete slab was in; that he didn't think it would be "feasible" to remove the front wall; and, oddly enough, that the wall *could* be removed to the set-back line at a cost of $2,500. Appellee's witness, Ralph Anderson, a contractor and bricklayer with 30 years' experience, testified that the slab forming the porch floor could be removed without causing the structure to fall. He stated, however, that it would not be "feasible" to cut back the "front wall" to the 25-foot line and at the same time estimated the cost of doing so at $2,000 to $2,500.

Appellant testified that he had been a builder and contractor for 5½ years. He admitted that he knew of the ordinance requiring him to build the front wall of his house at least 25 feet behind the front property line; that he knew of the existence of the Board of Adjustment. It appeared that appellant built Mr. Kovacs' home and one other home on the same street, and in these cases observed the mandate of the ordinance.

The Act of June 24, 1931, P. L. 1206, art. XXXI, section 3107, as amended by the Act of May 27, 1949, P. L. 1955, section 59, 53 PS 19092-3107 provides, inter alia: "Such board of township commissioners may appoint a board of adjustment, and, in the regulations and restrictions adopted pursuant to the authority of this article, may provide that said board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with gen-

eral or specific rules therein contained . . . The board of adjustment shall have the following powers: . . . (3) To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

The scope of judicial review with respect to the exercise of administrative duty under this statute is as on certiorari; and only where such action has been "arbitrary, capricious and unreasonable or clearly in violation of positive law" (*Triolo et al. v. Exley et al.,* 358 Pa. 555, 558, 57 A. 2d 878; *Floersheim Appeal,* 348 Pa. 98, 100, 34 A. 2d 62), or where the Board's action discloses a "manifest and flagrant abuse of discretion" (*Perelman et al. v. Yeadon Borough,* 144 Pa. Superior Ct. 5, 10, 18 A. 2d 438), will the courts interfere. The court below, in an exceptionally able opinion, concluded that the Board of Adjustment of Ross Township was guilty of a "manifest and flagrant abuse of discretion". With that conclusion we agree.

A variance may be granted "where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship". The Board's reasons for granting a variance must, accordingly, be "substantial, serious and compelling" (*Valicenti's Appeal,* 298 Pa. 276, 283, 148 A. 308); and the power is to be "sparingly exercised and only under peculiar and exceptional circumstances, for otherwise there would be little left of the zoning law to protect public rights" (*Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478, 485, 41 A. 2d 744). In the case at bar the Board granted the variance because: "The Building Inspector inspected the footer and ap-

proved the construction"; because it would cost the property owner a minimum of $2,000 to $2,500 to correct the violation; and because the construction "conceivably is less injurious to Mr. Kovacs than were it to be constructed strictly in accordance with the Ordinance" and "in no way injurious to Mr. and Mrs. Morrison, or to any other family" on the street on which it is located. Whatever may be the merits of those reasons in another case, they are not "substantial, serious and compelling" under the facts of this case.

The approval of the building inspector is of no importance. There is uncontradicted testimony to the effect that the appellant informed the building inspector that the footers were intended to serve as the base for a porch. Article VII, section 21, of Ordinance No. 446 permits the building of a porch in a "front yard". The appellant can derive no advantage from approval obtained by deception. Further, it is apparent that the appellant did not rely on the building inspector's approval. He was well aware of the set-back requirement, having constructed other houses on the same street. Finally, appellant could gain no vested right by reliance upon the word of a mere ministerial officer. There would appear to be no direct authority for this proposition. There is, however, the case of *Vogt v. Port Vue Borough,* 170 Pa. Superior Ct. 526, 85 A. 2d 688, which holds that even a municipal permit, if issued illegally or in violation of law, or under a mistake of fact, "confers no vested right or privilege on the person to whom the permit has been issued and may be revoked notwithstanding that he may have acted upon the permit; any expenditures made in reliance upon such permit are made at his peril". That principle is broad enough to cover the instant case.

The hardship to which this appellant will be subjected if the ordinance is enforced is to a great extent

self-inflicted. The appellant continued to work on his dwelling after he was fully aware that its legality had been seriously questioned. He completed the front of the house, the very part in dispute, just two weeks before the board hearing of April 9, 1952. Two of the three witnesses who gave hardship testimony were of the opinion that the principal difficulty in making appellant's dwelling conform to the set-back line was the removal of a concrete slab which formed the floor of the open porch. This slab was installed by appellant within the time for appeal from the granting of a variance. Appellant must have been aware that an appeal could be taken because he had himself done so from an earlier ruling of the board. It is, of course, clear that the legislature never intended that a landowner could create his own "unnecessary hardship" and then rely upon it to secure a variance.

The reasoning of the board with respect to the absence of harm to appellant's neighbors is fallacious. The set-back provision of the ordinance exists and it is not the province of the Board of Adjustment "to set at naught the zoning statute under the guise of a variance". *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478, 485, 41 A. 2d 744, supra. In *Jennings' Appeal,* 330 Pa. 154, 198 A. 621, the Supreme Court stated at page 160: "The court [on appeal by landowner from a refusal to grant a variance] is not empowered to say that the 'general welfare' of the other property owners whose use is limited to one-family residences is secured and the 'spirit of this ordinance' is observed and 'substantial justice' done by excepting from the operation of the ordinance the particular dwelling owned by the appellants." What is said with respect to the court applies with equal force to the Board of Adjustment.

Order affirmed.