Ferguson Township *v*. The Zoning Hearing Board of Ferguson Township et al. Donald A. Dreibelbis Appellant.

Argued November 16, 1983, before Judges ROGERS, BARRY and BARBIERI, sitting as a panel of three.

*Richard L. Campbell, Miller, Kistler & Campbell, Inc.,* for appellant.

*Ronald M. Lucas, Corneal, Mason & Lucas,* for appellee.

OPINION BY JUDGE BARRY, May 7, 1984:

The appellant, Donald Dreibelbis, filed an appeal from an order of the Ferguson Township Zoning Officer denying an application for a zoning permit for a commercial use on his twenty-three-acre tract of land. The Zoning Hearing Board of Ferguson Township (Board) held hearings on the matter, and thereafter granted the appeal and overruled the zoning officer. Subsequently, Ferguson Township (Township) filed an appeal from the decision of the Board to the Court of Common Pleas of Centre County. The trial court reversed the Board and upheld the zoning officer's decision to deny the zoning permit. An appeal from this order followed.

There are two large buildings on appellant's land, the more northern of which housed a poultry business.

In July of 1966, the appellant requested that his tract be rezoned from R-2, Low Density Residence District, to C-2, Planned Commercial District. The Township approved this request, but due to particular procedural problems the Township did not adopt the rezoning ordinance until 1977. Between 1966 and 1977 the northern building was used largely for a poultry operation while the southern building was used for housing cattle, food processing, and a retail outlet for milk and other products.

In January of 1978, the appellant sold his poultry and livestock. He intended to discontinue the existing operations on the premises and to rent the buildings for commercial use.

On May 30, 1978, the appellant telephoned the Township Zoning Officer and inquired about the permitted uses of the property. The zoning officer informed the appellant that the property could be used for any purpose which complied with the C-2 zoning classification of the Township. He also sent the appellant a copy of the Township Ordinance which listed proper C-2 uses. In late June of 1978, the appellant entered into an oral lease for the northern building effective in the spring of 1979, with Furniture Exchange, Inc., and its owner Mr. Herbert Taub. During the same month, the appellant telephoned the zoning officer to inquire if any permits were required for the proposed renovation. Appellant spoke with the zoning officer's secretary who informed him that he did not need permits. Later, the appellant spoke with the assistant zoning officer on whether he needed permits. The assistant zoning officer informed him that he did not need a permit.

From the summer of 1978 through May of 1979, improvements were made to the building leased to Taub. By the end of July of 1978 the appellant had sold the remaining equipment which he had used in

his dairy and egg retail operation and closed down his retail sales operation.

On September 19, 1978, the appellant received a letter from the Township which notified him that his premises might be rezoned to a lower intensity since he no longer used his property for a commercial purpose. In January of 1979, the Township passed a motion that appellant's land be considered for rezoning in conjunction with a request by Oxford Development Company to rezone an adjacent tract consisting of approximately one hundred acres.

On April 11, 1979, the appellant telephoned the zoning officer and asked if the northern building could be used for a furniture store, to which he received a response in the affirmative. The zoning officer, moreover, told the appellant that no permits were required but that he should make sure by inquiring with the Code Enforcement Officer.

In April and May of 1979, Taub completed more extensive renovations and began to move merchandise into the northern building. He anticipated a formal opening date of June 1, 1979, although some sales had been made from the premises during April and May of 1979.

On May 24, 1979, the Township rezoned appellant's tract from C-2 to R-2 and R-0, effective May 26, 1979.

On June 8, 1979, a stop-work order was issued by the Centre Regional Code Enforcement Office since a zoning permit had not been secured. Appellant made application for a zoning permit on June 13, 1979, the denial of which forms the basis for this appeal.

The essential question confronted by this Court is whether the failure of the appellant to obtain a permit as a result of misinformation received from the Township Zoning Officer and his secretary is sufficient to obviate a requirement that the permit be issued and therefore vest rights in the appellant. The vested

rights doctrine originated in *Herskovits v. Irwin,* 299 Pa. 155, 149 A. 195 (1930), which decided that a landowner acquires a vested right when he obtains a valid permit and acts in reliance on that permit.

In *Department of Environmental Resources v. Flynn,* 21 Pa. Commonwealth Ct. 264, 344 A.2d 720 (1975), this Court articulated a five-prong test in order to determine whether a landowner has acquired a vested right. The factors include good faith, due diligence in attempting to comply with the law, the expenditure of substantial, unrecoverable funds, the expiration without appeal of the period during which an appeal could have been taken from the issuance of a permit, and the insufficiency of evidence to prove that individual property rights or the public, health, safety, or welfare have been adversely affected by the use of a permit. *See also Petrosky v. Zoning Hearing Board of the Township of Upper Chichester,* 485 Pa. 501, 402 A.2d 1385 (1979).

It seems clear, however, that in order to acquire vested rights a valid permit must be issued prior to the adoption of a zoning ordinance. *Altland v. Sprenkle,* 57 Pa. Commonwealth Ct. 548, 427 A.2d 275 (1981); *In Re: Appeal by Mark-Garner Associates, Inc.,* 50 Pa. Commonwealth Ct. 354, 413 A.2d 1142 (1980).

Appellant maintains that he has relied on misinformation given him by the zoning officer and his secretary concerning the need for permits for construction and renovation of the northern building. It has been held that vested rights could not be gained by relying on the statements of mere ministerial officers and, if one does so, and makes expenditures for construction in reliance thereon, he does so at his own peril. *Kovacs v. Ross Township,* 173 Pa. Superior Ct. 66, 95 A.2d 350 (1953). We believe this to be an accurate statement of the law applicable to this case.

This Court decided in *Hopewell Township v. Wilson,* 46 Pa. Commonwealth Ct. 425, 406 A.2d 610 (1979), that, in proceedings for violation of township building permit ordinance, statements by a building permit officer, which allegedly misled property owners to believe that a building permit might not be necessary, were relevant and admissible regarding mitigation of any penalty to be imposed; those statements, however, would not operate as an estoppel against the municipality. The Pennsylvania Supreme Court, citing *Kovacs,* also held that a builder's reliance upon the failure of a ministerial officer inspecting construction to report any violations of the zoning code did not justify a variance. *Stratford Arms, Inc. v. Zoning Board of Adjustment,* 429 Pa. 132, 239 A.2d 325 (1968).

The law, furthermore, requires that an applicant obtain a permit in order to acquire a vested right. In this case, petitioner failed to acquire a permit and, therefore, did not acquire a vested right. *Altland.*

Appellant also contends that the trial court erred when it found that he had not established a nonconforming use. In July, 1966, the appellant had requested that his property be rezoned from R-2 to C-2. Until 1977, when the Township finally rezoned his land to C-2, appellant had a nonconforming use. The use thus became conforming. Upon the Township's zoning change of the property to R-2 the appellant perhaps still had a legal right to a nonconforming use of the property as a poultry operation if that use had not been abandoned. Taub wishes, however, to use the property as a furniture store, but he acquired no legal right, under these facts, to a nonconforming use for this purpose.[1]

---

[1] In the opinion of the trial court, Judge LEHMAN stated:

Dreibelis argues that he should be allowed to use the northern building for a furniture store even though that would constitute a nonconforming use under the May 24,

For the reasons set forth herein, we affirm the trial court order.

---

1979, rezoning because it would involve a change from one nonconforming use to a less obnoxious nonconforming use. In support of that proposition, Dreibelbis cites the cases of O'Neill v. Philadelphia Zoning Board of Adjustment, 384 Pa. 379, 120 A.2d 901 (1956), and Logan Square Neighborhood Association v. Zoning Board of Adjustment of the City of Philadelphia, 32 Pa. Cmwlth. 277, 379 A.2d 632 (1977). However, a critical distinction between the case sub-judice and the cases cited above is that those cases involved appeals from the denial of a requested variance. Here we are concerned with the question of whether or not the Appellant's zoning officer should be required to issue a zoning permit and/or a building permit to Dreibelbis. While the Courts in the above-cited cases could delve into questions of unnecessary hardship created by a combination of the physical characteristics of the property and a zoning change, here we can only concern ourselves with the question of whether a zoning permit should issue for a commercial use in an area presently zoned residential under our unique factual situation. We can find no authority for the doctrine proposed by Dreibelbis outside of the scenario of appeals from denial of variance requests and we feel that requiring Appellant's zoning officer to issue a permit on that basis would be error on our part.

Dreibelbis argues in his brief that the Court should grant a variance to allow the commercial use of the property to continue, notwithstanding the zoning ordinance of May 24, 1979. We disagree. Although this case presents a situation where a variance may properly be granted, it appears that a variance request was never made to the Appellee. Sections 912 and 1006(d) of the Pennsylvania Municipalities Planning Code, 53 P.S. §§10912 and 11006(d) respectively, clearly indicate that it is the province of the zoning hearing board to first consider a variance request. It is only after a variance request has been granted or denied and that decision properly appealed to this Court before the question of the propriety of a variance is in a proper posture for our decision. As no application for a variance was made below, we cannot now order a variance be granted.

## ORDER

AND NOW, May 7, 1984, the Order of the Court of Common Pleas of Centre County, dated December 15, 1981, at Appeal No. 1979-2624A, is affirmed.

Judge CRAIG did not participate in this decision.