**GEMSTAR CORPORATION, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1998.
Decided March 16, 1999.

Norman G. Matlock, Philadelphia, for petitioner.

William Stanley Sneath, Conshohocken, for respondent.

Before McGINLEY, J., SMITH, J., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Gemstar Corporation (Gemstar) petitions for review of the February 10, 1998 adjudication and order of the Environmental Hearing Board (Board) that dismissed in part Gemstar's objections to a Department of Environmental Protection (DEP) order and civil penalty assessment against Gemstar for violations of the Solid Waste Management Act (Act), Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101—6018.1003. The order also sustained two of Gemstar's objections and reduced the assessed penalty. The principal issue before this Court is whether the Board properly excluded proffered evidence of Gemstar's detrimental reliance upon DEP's assurances regarding its review of Gemstar's permit modification ap-

plication and proffered evidence of local municipal interference with Gemstar's operations.[1]

Gemstar was granted a permit to operate a waste-tire recycling facility in Springfield Township (Township) pursuant to the Act on June 14, 1989. The site for the facility had a pre-existing waste-tire inventory, and DEP included conditions in the permit designed to reduce this inventory. These conditions required Gemstar among other things to (1) shred three waste tires for each new tire accepted at the facility and (2) remove shredded tires within one week of their shredding. Gemstar never commenced operation under these conditions. Instead, Gemstar's permit was amended in 1993 to allow Gemstar to (1) accept one new waste tire for each shredded tire during Gemstar's first year of operation only and (2) store 144,000 shredded tires at the facility.

Nine DEP inspections of the Gemstar facility since 1993 revealed that Gemstar's waste-tire inventory was not being reduced as contemplated by the permit. After each inspection DEP mailed Gemstar an inspection report notifying Gemstar of numerous violations of permit conditions. On December 11, 1996, DEP suspended Gemstar's permit and assessed a $225,000 civil penalty.[2] Gemstar filed a notice of appeal with the Board claiming in part that DEP's action was an abuse of process and pointing particularly to DEP's failure to act on Gemstar's pending

application for modification of its permit filed in September 1995. According to Gemstar, a modification of the permit would have allowed Gemstar to expand and upgrade the site's operations to include a new process that would convert the tires to crumb rubber for recycling purposes. Further, Gemstar claims that this new technology would have addressed violations found at the site and that Gemstar expended over $600,000 for equipment to perform the expanded processes in reliance upon DEP's anticipated approval of the permit modification.

■ At the Board hearings on this matter, Gemstar attempted to present evidence that DEP had unreasonably delayed action on a permit modification request that would have allegedly cured Gemstar's violations, that DEP officials had led Gemstar to reasonably believe approval was imminent and that Township supervisors had inappropriately interfered with Gemstar's permit compliance. The Board, however, excluded such evidence, finding it irrelevant to the issues presented in Gemstar's notice of appeal. The Board reduced Gemstar's penalty to $174,500 and sustained two of its specific objections,[3] but the Board otherwise dismissed the appeal. This appeal followed.[4]

■ Gemstar first contends that by excluding the evidence of the pending permit modification and the Township actions, the Board deprived Gemstar of a fair opportunity to present its side of this controversy. Ac-

---

1. In a related civil action between Gemstar and the local township, this Court reversed in part a common pleas court order that held Gemstar in civil contempt despite an absence of evidence establishing that Gemstar, was able to comply with the prior court order. *See Township of Springfield v. Gemstar Corporation* (Pa.Cmwlth., Nos. 2435 & 2872 C.D.1997, filed December 4, 1998). The contempt order also denied the president of Gemstar due process by holding him in contempt and ordering him imprisoned him on a six-month sentence even though he was never a proper party to the action.

2. DEP's penalty assessment cites Gemstar for failure to maintain stockpiles of waste tires at less than 10,000 square feet and 20 feet high, store tires only within permitted boundaries, construct a fence or other suitable barrier around the facility, maintain an accurate accounting of the waste tire inventory, provide adequate fire lanes, prevent concentrations of

disease-spreading mosquitos, pave or surface the access road, clearly mark the perimeter of the facility, prevent erosion in the facility and transport waste tires to an alternate disposal or processing facility when necessary.

3. The Board sustained Gemstar's objection to the failure to utilize an alternate facility violation and partially sustained Gemstar's objection to the failure to control mosquitos violation.

4. This Court's review of a decision of the Board is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record and whether it committed an error of law or a constitutional violation. *Westinghouse Electric Corporation v. Pennsylvania Department of Environmental Protection*, 705 A.2d 1349 (Pa.Cmwlth.1998), *appeal denied*, — Pa. ——, — A.2d ——, 1998 WL 690913 (No. 213 W.D. Alloc. Dkt.1998, filed October 7, 1998).

cording to Gemstar, its recycling operation was always intended to produce saleable products from the waste tires, and the only purpose for its shredding operation was to prepare waste tires for an end process that would reduce them to a saleable form. Once such an end process is in operation, Gemstar believes it can comply with the permit conditions, but until that time Gemstar must stockpile a large waste-tire inventory and has little cash flow. Gemstar sought to present evidence that improper actions by Township supervisors thwarted Gemstar's first attempt to implement an end process and that DEP unreasonably delayed action on a pending permit modification request that would have enabled Gemstar to begin a different end process. Gemstar also proffered testimony that a DEP official led it to believe that the modification was minor and that approval was imminent.

Gemstar argues that its continuing violation of the permit conditions was reasonable in light of the belief fostered by DEP that approval of the permit modification request was imminent, which would allow Gemstar to produce a saleable product and bring Gemstar into compliance. Gemstar also contends that improper Township opposition to Gemstar's operation unavoidably caused its non-compliance. The Board ruled that DEP's failure to act on a pending application does not excuse failure to comply with an existing permit. The Board also found evidence of Township interference relevant only where a clear connection between the Township actions and DEP's penalty assessment is shown.

■ The Board is bound by rules relating to the admission of relevant evidence. *Concerned Residents of Yough, Inc. v. Department of Environmental Resources*, 162 Pa.Cmwlth. 669, 639 A.2d 1265 (1994). The regulations for practice and procedure before the Board provide that "relevant and material evidence of reasonable probative value is admissible." 25 Pa.Code § 1021.107(a). It is well established that "evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption

regarding the existence of a material fact." *Commonwealth v. LaCava*, 542 Pa. 160, 174, 666 A.2d 221, 227 (1995).

■ Section 605 of the Act, 35 P.S. § 6018.605, authorizes DEP to assess civil penalties for violation of solid waste permits and provides in part:

> Such a penalty may be assessed whether or not the violation was willful or negligent. In determining the amount of the penalty, the department shall consider the willfulness of the violation, damage to air, water, land or other natural resources of the Commonwealth or their uses, cost of restoration and abatement, savings resulting to the person in consequence of such violation, and other relevant factors.

Clearly, Section 605 injects the permittee's mental state into any DEP determination of whether to penalize a violation and how great a penalty to assess. Thus Gemstar's mental state was unavoidably at issue in the penalty proceedings before the Board.

■ Under some circumstances, an application for a permit modification may be a reasonable means of correcting a permit violation, particularly when the permittee receives credible assurances that approval is imminent. *See, e.g., Concerned Residents of Yough, Inc.* (explaining that DEP has discretion to issue a new permit when the permittee is working toward reasonable compliance even where there are ongoing violations of the former permit). Also, a permittee whose efforts to comply with permit conditions are thwarted by another party can not be characterized as a willful violator. Thus the evidence proffered by Gemstar tends to make it less probable that Gemstar acted willfully or negligently. If the Board credits Gemstar's evidence, it could find assessment of penalties against Gemstar an abuse of DEP's discretion. The Court notes that the Board permitted Gemstar to offer testimony on whether it made good faith efforts at compliance but refused to allow Gemstar to examine DEP officials regarding the application to modify the permit or to examine local officials regarding their role in this controversy. Given the centrality of these matters to the defense presented in Gemstar's notice of ap-

peal, the Board abused its discretion by excluding Gemstar's presentation.

DEP argues that the Board properly excluded the evidence proffered by Gemstar because the pendency of a permit application has no relevance to determining whether current operations are in compliance with the law. DEP further maintains that any representations it made to Gemstar are irrelevant because Gemstar could gain no vested rights from such a representation and any expenditures it made thereupon were at Gemstar's own risk. In support of this proposition DEP cites *Stratford Arms, Inc. v. Zoning Board of Adjustment*, 429 Pa. 132, 239 A.2d 325 (1968), and *Kovacs v. Board of Adjustment of Ross Township*, 173 Pa.Super. 66, 95 A.2d 350 (1953). Both of those cases hold that reliance on the word of a mere ministerial officer cannot justify a zoning variance. On the penalty issue, however, Gemstar does not seek to acquire a new vested right. Rather, Gemstar offers the alleged representation as evidence that it acted reasonably, and for such purpose the representation is relevant. Because DEP's arguments at best demonstrate that Gemstar failed to comply with its permit, they do not refute the relevance of the proffered evidence to DEP's exercise of discretion in assessing penalties for Gemstar's noncompliance.

Next Gemstar presents the Court with the question of whether DEP abused its discretion by imposing a penalty in light of the pending permit modification and other factors. As the evidence relating to the permit modification was excluded and the Board made no findings on this point, the existing record prevents the Court from addressing that issue and fully performing its appellate review. The Court's disposition of Gemstar's first issue requires remand for evidentiary hearings that may impact the evidence supporting the penalties imposed; accordingly, the Court declines to address the final issues presented by Gemstar in its challenge to the lack of record support for the penalties imposed against it. The order of the Board is vacated, and the case is remanded for further hearing to permit Gemstar to present the

improperly excluded evidence after which a new adjudication and order shall be issued.

## ORDER

AND NOW, this 16th day of March, 1999, the order of the Environmental Hearing Board is vacated, and this case is remanded to the Board for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that "the Board ... refused to allow Gemstar to examine DEP officials regarding the application to modify the permit or to examine local officials regarding their role in this controversy" and that "[g]iven the centrality of these matters to the defense presented in Gemstar's notice of appeal, the Board abused its discretion by excluding Gemstar's presentation."

Initially, Gemstar contends that DEP unreasonably delayed acting upon Gemstar's application to modify its permit, and that within the pending permit modifications were remedies addressing all violations in the December 11, 1996, order and civil penalty assessment.

Section 503(c) of the Solid Waste Management Act (Act)[1], 35 P.S. § 6018.503(c) provides that "[i]n carrying out the provisions of this act, the department may deny, suspend, modify, or revoke any permit or license if it finds that the applicant, permittee or licensee failed or continues to fail to comply with any provision of this act...." Section 503(d) of the Act provides that "[a]ny person ... engaged in unlawful conduct as defined in this act ... shall be denied any permit or license required by this act ... unless the permit ... demonstrates to the satisfaction of the department that the unlawful conduct has been corrected." Pursuant to the Act, DEP must consider whether there has been compliance with the terms and conditions of the existing permit. Therefore, any evidence concerning the permit modification application was irrelevant to any determination

---

1. Act of July 7, 1980, P.L. 380, *as amended.*

whether Gemstar had complied with the existing permit.

Gemstar next contends that it was precluded from presenting a Springfield Township supervisor's testimony that a local township official was biased toward Gemstar.[2] However, Gemstar admitted that the proffered testimony would not establish that DEP acted improperly.[3] The Board properly excluded this testimony.

I believe that the sole issue before this Court is whether DEP abused its discretion when it suspended Gemstar's permit, and not whether Springfield Township (not a party in this present controversy) acted improperly. I would affirm the Board and uphold the civil penalty assessed against Gemstar.

---

**2.** Norman G. Matlock (Matlock), Gemstar's attorney, to Chairman George J. Miller (Chairman Miller):

> Matlock: Well, I'll just note for the record that I do believe that I have an extreme bias and ill will.
> Chairman Miller: Will you please make an offer of proof, then, if you think you have some evidence of that.
> Matlock: Certainly. In our side of the case, we intend to show that officers of the township had bias against Gemstar for the reason of taking over the business.
> Chairman Miller: Do you have any witness who is going to testify to that?
> Matlock: Yes.
> . . . .
> Matlock: At this point, Your Honor, I would like to . . . bring in a witness that is listed as Mr. Mease, who is a Township Supervisor.
> Chairman Miller: What is the offer of proof with respect to the Township Supervisor?
> Matlock: The offer of proof, Your Honor, is that the township, indeed, has if you recall this morning, we talked about the fact that there had been an attempt to wrest this business from Mr. Fausto and you allowed that he should be able to talk about that.

Notes of Testimony (N.T.), September 3, 1997, at Reproduced Record (R.R.) 277–78 and 380.

**3.** Chairman Miller to Matlock:

> Chairman Miller: All I have heard is that you have a Township Supervisor essentially doing what he viewed, at least, as his public duty to stir the DEP on to do what is its public duty—isn't that right?
> Matlock: No, that's not quite right.
> Chairman Miller: What evidence do you have beyond that?
> Matlock: The evidence again you would not allow the supervisor who was here to testify to, to so testify about again – the plan includes a personal benefit to Mr. Hopkins [supervisor on the Board of Springfield Township]. So, it is not just him doing his civic duty as a supervisor. It is a plan that would personally benefit Mr. Hopkins.
> Chairman Miller: Do you have any evidence that this would be a personal benefit to anybody in the Department?
> Matlock: At the Department?
> Chairman Miller: Yes.
> Matlock: No, I do not.

N.T. at R.R. at 396–97.