IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Dombroski and Elizabeth   :
Dombroski, husband and wife,   :
   :
   Appellants  :
   :
   v.   :  No. 1050 C.D. 2018
   :  Argued: April 9, 2019
Dallas Township Zoning Hearing   :
Board and Alan Pugh and Brenda   :
Pugh, husband and wife   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
   HONORABLE ANNE E. COVEY, Judge
   HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK       FILED: May 21, 2019


Michael Dombroski (Mr. Dombroski) and Elizabeth Dombroski, husband and wife (collectively, Landowners) appeal from an order of the Court of Common Pleas of Luzerne County (trial court) that denied their requests for a use variance and a variance by estoppel and determined that Landowners have not acquired vested rights to have a multi-family dwelling in an agricultural district. Landowners contend that the trial court erred in determining that they were not entitled to equitable relief based on the theories of variance by estoppel and/or vested rights. Upon review, we reverse based on the theory of variance by estoppel.

## I. Background

Landowners own 2.379 acres of land, which is improved with a building (Property) currently used as a multi-family dwelling occupied by tenants.

The Property is located in Dallas Township (Township), Luzerne County, Pennsylvania in the A-1 Agricultural District (Agricultural District) under the provisions of the Dallas Township Zoning Ordinance (Ordinance).[1]

In September 2016, the Township's zoning officer issued Landowners an enforcement notice upon determining that they were operating a multi-family dwelling unit in violation of Section 502 of the Ordinance, which does not permit multi-family dwellings by right or special exception in the Agricultural District. Landowners appealed the enforcement notice and requested a use variance to continue to operate the Property as a multi-family unit.

The Dallas Township Zoning Hearing Board (Board) held a public hearing. The Township presented evidence in support of the violation. Landowners presented evidence in support of their use variance request. Neighboring property owners, including Alan and Brenda Pugh, husband and wife (Objectors), appeared in opposition to the variance request. Based on the evidence presented, the Board unanimously voted to deny the use variance.

From this decision, Landowners filed a notice of land use appeal with the trial court. Landowners asserted that the Board erred or abused its discretion by: denying the use variance; failing to recognize that Landowners had a vested right to continue the current use; and failing to recognize that the action of the zoning officer in issuing an enforcement notice was barred by the doctrine of laches. Landowners moved for the presentation of additional evidence, which the trial court granted. Objectors intervened.

The trial court conducted a *de novo* hearing and made its own findings of fact and conclusions of law. Based on the evidence presented, the trial court found

---

[1] The Ordinance was enacted June 17, 2008.

2

Landowners purchased the Property, which was the former Pine Brook Inn restaurant and bar, in 2001 from First Liberty Bank. The Property is located in the Agricultural District and is improved with a two-story, 5,000-square-foot building and a two-stall garage. The Property has a pond that abuts a neighboring property and a wooded area. At the time of purchase, the first floor had a dining room, bar and kitchen; the second floor had an apartment. The restaurant closed in 1999. Landowners intended to open a restaurant, but never did. Landowners' son and a couple of his friends occupied the second floor apartment for several years. The first floor remained vacant and unused from 2001 to 2007. Trial Court Opinion, 6/29/18, Findings of Fact (F.F.) Nos. 1-6.

Under the Ordinance, a multi-family dwelling is not permitted in the Agricultural District. F.F. No. 7. Section 203 of the Ordinance defines family as: "one or more persons occupying a dwelling unit and living together as a single nonprofit housekeeping unit." F.F. No. 8. "Section 203 further denotes that a group in excess of four individuals who are not related by blood, marriage, or legal adoption shall not be deemed to constitute a family." F.F. No. 9.

In 2007, Landowners began the conversion of the first-floor restaurant into a four-bedroom, two-bathroom, one-unit apartment by meeting with the Township. Mr. Dombroski, who is a self-employed general contractor and has been for the last 28 years, met with Leonard Kozick, who was the Township's Zoning Officer (ZO Kozick) at the time, to discuss the renovations. At this meeting, Mr. Dombroski inquired about the necessity of a building permit. He did not inquire as to whether he needed a zoning permit. ZO Kozick advised him that a building permit was not required because the proposed renovations were entirely inside the building.

ZO Kozick never issued a building or zoning permit to Landowners. F.F. Nos. 10-16.

Landowners then converted the 5,000-square-foot building into a multi-family unit with the two apartments. On the first floor, Landowners ripped out the kitchen, dining room and bar and reconstructed the space into a one-unit apartment. Landowners modernized the existing second floor apartment unit with replacement windows, new roof and HVAC system. The apartments, which are equal in size (2,500 square feet), each have four bedrooms, two full bathrooms, a full kitchen and a laundry room. In 2008, Landowners began renting the first-floor unit to college (Misericordia University) students. There are currently two leases for the Property with four college students on each lease, co-signed by their parents. Four students reside in the first-floor unit; four students reside in the second-floor unit. Rules incorporated into the lease include prohibitions on loud parties, firearms, and swimming in the pond located on the Property. F.F. Nos. 17-19, 20-22, 24.

In 2012, the Township instituted a requirement that all multi-family landlords file a document known as "Dallas Township Property Owners Tenant Information" annually, listing the names of all tenants. In compliance, Landowners have provided a list of tenants on an annual basis since 2012. In 2015, they were cited for not providing the tenant information, which they promptly corrected. F.F. No. 41.

After receiving complaints regarding the Property, in 2015, the Township issued three citations for violations of its Nuisance Ordinance. Upon review of the complaints and Property records, the new Zoning Officer Carl M. Alber (ZO Alber), who took the post in 2012, became aware that Landowners had not obtained zoning or building approval in 2007. In September 2016, ZO Alber

4

issued a notice of violations and a letter to Landowners notifying them that in order to continue using the Property as two apartments, they had to apply for a change in use variance. F.F. Nos. 27-29, 37-40.

Neighboring property owners, including Objectors, testified regarding noise and other nuisances caused by the tenants of the Property, including loud parties, trash-strewn pond and street, public urination, bonfires in the woods, trespassing onto neighboring properties, etc. Police were called to respond to disturbances at the Property. The neighboring property owners also testified that the loud noise and other problems associated with student housing in this location affected their quality of life and raised concerns regarding their property values. F.F. Nos. 32-36.

Ultimately, the trial court determined that Landowners failed to meet the standard criteria for a use variance. Landowners failed to provide evidence regarding any unique physical circumstances or conditions peculiar to the Property. The Property "was used and previously zoned for a restaurant and single dwelling unit, which was in conformity with the zoning status." Trial Court Op. at 17. Landowners created any hardship suffered by transforming the Property and changing its use. The trial court determined that the use variance would alter the character of the neighborhood.

The trial court also determined that Landowners were not entitled to equitable relief based on the asserted theories of vested rights or variance by estoppel. The trial court noted that such are unusual remedies granted only in the most extraordinary circumstances. To maintain a vested right, a property owner must establish that he relied on permits issued by the government to his detriment. Landowners never applied for, nor received, any permits for the work performed.

5

Landowners undertook the renovation and changed the use without first seeking zoning approval.

For a variance by estoppel, the property owner must prove that the municipality knew or should have known of the violation and the owner acted in good faith relying on that acquiescence. When Landowners approached ZO Kozick about the renovation, they only inquired about whether they needed to obtain the building permit to perform interior renovations. Landowners never inquired about zoning. Municipal knowledge regarding the zoning issue cannot be imputed based on a discussion regarding building permits. Thus, the trial court denied Landowners' request for a use variance and variance by estoppel and determined they did not acquire vested rights to use the Property as a multi-family dwelling. From this decision, Landowners appealed to this Court.[2]

## II. Issues

In this appeal, Landowners present two issues for our review. First, Landowners maintain that the trial court should have granted a variance by estoppel when they established by clear, precise and unequivocal evidence that the Township knew of the multi-family use for a long period of time and acquiesced to that use; Landowners acted in good faith and innocently relied on the validity of the use; Landowners made substantial expenditures in reliance on the belief that the use was

_____

[2] In zoning appeals, where the trial court takes additional evidence, it must determine the case *de novo*, making its own findings of fact based on the record made before the Board as supplemented by the additional evidence. *Mitchell v. Zoning Hearing Board of the Borough of Mount Penn*, 838 A.2d 819, 825 (Pa. Cmwlth. 2003). Our review is limited to determining whether the trial court, not the Board, committed an abuse of discretion or an error of law in rendering its decision. *Id.* An abuse of discretion occurs when findings of fact are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Northampton Township v. Zoning Hearing Board Northampton Township*, 969 A.2d 24, 27 n.1 (Pa. Cmwlth. 2009).

6

permitted; and the denial of the variance would impose an unnecessary hardship on Landowners.

Second, Landowners contend that the trial court should have determined that Landowners acquired a vested right in a variance where Landowners attempted to comply with the zoning laws in good faith by informing the zoning officer of their intended plans for the use of their Property; complied in good faith with all directives from the municipality made known to them concerning the use of the Property and the requirements of the municipal ordinances; expended substantial funds in the conversion of their Property that they informed the municipality they were going to make which were not recoverable if the use was later revoked; the period for the appeal of Landowners' use had long run out because the municipality and Objectors had constructive knowledge of the use since 2008; and there is an insufficiency of evidence that any negative impacts on individual property rights or the public health, safety or welfare affected by the permit could not be remedied.[3]

### III. Discussion
### A. Variance by Estoppel

First, Landowners assert that they are entitled to a variance to continue to use the Property as a multi-family unit as a matter of equity under the theory of variance by estoppel. A variance by estoppel occurs where there has been municipal inaction amounting to active acquiescence in an illegal use. Similarly, equitable estoppel is available where the municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon that representation. A variance by estoppel is appropriate when the use does not conform to the zoning ordinance and the property owner establishes: 1) a long period

---

[3] Landowners do not challenge the trial court's determination that they do not meet the standard criteria for a use variance.

of municipal failure to enforce the law, when the municipality knew or should have known of the violation; 2) the landowner acted in good faith and relied upon the validity of the use throughout the proceeding; 3) the landowner has made substantial expenditures in reliance upon his belief that his use was permitted; and 4) denial of the variance would impose an unnecessary hardship on the landowner. According to Landowners, the Township and Objectors were well aware of the Property's actual use as a multi-family dwelling since at least 2008, but did nothing. Landowners maintain that they have acted in good faith by initially inquiring about the need for permits, submitting tenant information sheets, remedying reported violations, complying with inspection requirements and filing an application for variance. Landowners have made substantial expenditures renovating the first floor. Landowners assert that, at the time they inquired about converting the use, and made the renovations, multi-family dwellings were not prohibited in the Agricultural District. Landowners claim they will suffer an unnecessary hardship if they are not permitted to continue the multi-family use in that they would lose the value of the renovations as well as rental income. We agree.

Variance by estoppel refers to a group of equitable doctrines in Pennsylvania land use/zoning law which preclude municipal enforcement of a land use regulation. *Vaughn v. Zoning Hearing Board of Township of Shaler*, 947 A.2d 218, 224 (Pa. Cmwlth.), *appeal denied*, 932 A.2d 1199 (Pa. 2008); *In re Kreider*, 808 A.2d 340, 343 (Pa. Cmwlth. 2002). Variance by estoppel may be applied where the municipality has taken an affirmative action such as issuing a permit ("vested right"); has "actively acquiesced" in an illegal use through its inaction ("variance by estoppel"); or has intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon that misrepresentation ("equitable

8

estoppel"). *Vaughn*, 947 A.2d at 224-25 (citing *In re Kreider*, 808 A.2d at 343). "Estoppel under these theories is an unusual remedy granted only in extraordinary circumstances and the landowner bears the burden of proving his entitlement to relief." *Id.* at 225 (quoting *In re Kreider*, 808 A.2d at 343). Except for the characterization of the municipal act that induces reliance, all three theories share common elements of good faith action on the part of the landowner, namely: (1) reliance to his detriment, such as making substantial expenditures; (2) an innocent belief that the use is permitted; and (3) hardship which would result from enforcement of the ordinance, such as the loss of the value of expenditures. *Id.*

Because the theories share common elements, they are often used interchangeably. *Vaughn*, 947 A.2d at 225 n.12. Municipal action underpinning the application of these doctrines may embody more than one category. *Vaughn*, 947 A.2d at 225; *see, e.g.*, *Knake v. Zoning Hearing Board of the Borough of Dormont*, 459 A.2d 1331 (Pa. Cmwlth. 1983) (active acquiescence manifested by the issuance of a permit); *Three Rivers Youth v. Zoning Board of Adjustment for the City of Pittsburgh*, 437 A.2d 1064, 1067 (Pa. Cmwlth. 1981) (issuance of a permit coupled with reliance on the zoning officer's interpretation of the ordinance).

Despite the commonalities among theories, minor distinctions remain. A variance by estoppel is appropriate when a use does not conform to the zoning ordinance and the property owner establishes all of the following:

> (1) *a long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction with some form of active acquiescence in the illegal use*; (2) the landowner acted in good faith and relied innocently upon the validity of the use throughout the proceeding; (3) the landowner has made substantial expenditures in reliance upon his belief

9

that his use was permitted; and (4) denial of the variance would impose an unnecessary hardship on the applicant.

*Borough of Dormont v. Zoning Hearing Board of Borough of Dormont*, 850 A.2d 826, 828 (Pa. Cmwlth. 2004) (citing *Springfield Township v. Kim*, 792 A.2d 717, 721 (Pa. Cmwlth. 2002), *appeal denied*, 825 A.2d 640 (Pa. 2003)) (emphasis added). These factors must be established by clear, precise and unequivocal evidence. *Springfield Township*, 792 A.2d at 722.

It is a well-settled principle that mere inaction in enforcing an ordinance, without more, cannot support the granting of a variance. *Springfield Township*, 792 A.2d at 722. For "active acquiescence," a landowner must show that the municipality committed some affirmative act. *Id.* Indeed, in cases where this Court has granted variance by estoppel, the municipalities have done more than passively stand by; "they committed an affirmative act, for example, granting a building permit or reasonably leading a landowner to conclude his use was lawful." *Pietropaolo v. Zoning Hearing Board of Lower Merion Township*, 979 A.2d 969, 981 (Pa. Cmwlth. 2009); *accord Springfield Township*, 792 A.2d at 722; *Skarvelis v. Zoning Hearing Board of Borough of Dormont*, 679 A.2d 278, 281 (Pa. Cmwlth. 1996); *see, e.g.*, *Knake*, 459 A.2d at 1332 (variance by estoppel granted where the Borough failed to act for 44 years, knew the use was impermissible for 23 years, and issued a building permit for the impermissible use); *Three Rivers*, 437 A.2d at 1067 (inaction by municipality for 7 years plus issuance of building permit by municipality and reliance by landowner on zoning officer's interpretation of zoning regulation); *Township of Haverford v. Spica*, 328 A.2d 878, 882 (Pa. Cmwlth. 1974) (inaction by municipality for 36 years and issuance of building permit with knowledge of municipality of intended construction).

10

Further, "'[w]here municipal inaction is compounded by facts which create a strong equity in the owner, the decision of the Supreme Court in *Sheedy v. Philadelphia Zoning Board of Adjustment*, [] 187 A.2d 907 ([Pa.] 1963), indicates that relief is possible.'" *Caporali v. Ward*, 493 A.2d 791, 793 (Pa. Cmwlth. 1985) (quoting R. Ryan, Pennsylvania Zoning Law and Practice, §8.3.5 (1970)). In assessing whether a landowner's reliance upon municipal inaction is reasonable, a landowner is, absent some municipal validation of the use, "duty bound to check the zoning status of the property before purchase." *Hasage v. Philadelphia Zoning Board of Adjustment*, 202 A.2d 61, 64 (Pa. 1964); *accord Appeal of Crawford*, 531 A.2d 865, 868 (Pa. Cmwlth. 1987).

Other relevant factors include whether the denial of the variance would impose an unnecessary hardship on the property owner and whether the use presents a threat to public health, safety or morals. *Bernie Enterprises v. Hilltown Township Zoning Hearing Board*, 657 A.2d 1364, 1367 (Pa. Cmwlth.), *appeal denied*, 666 A.2d 1058 (Pa. 1995).

Applying the foregoing principles here, we first examine whether Landowners proved some form of municipal "active acquiescence." Mr. Dombroski testified that he met with ZO Kozick in 2006 or 2007 to discuss his proposed renovations to the first floor. Notes of Testimony (N.T.), 11/21/16, at 11; Reproduced Record (R.R.) at 127a. Notably, this meeting occurred prior to the enactment of the Ordinance. Mr. Dombrowski inquired about the need for a building permit. N.T., 11/21/16, at 12; R.R. at 128a. In the process, he showed ZO Kozick his proposed plans and fully apprised him about his intention to *change the use* of the first floor from a restaurant and bar to a four-bedroom apartment unit. N.T., 11/21/16, at 12-13; R.R. at 128a-29a.

11

ZO Kozick admitted that, in 2006-2007, Mr. Dombroski told him of his plans to change the use. N.T., 2/12/18, at 18-19; R.R. at 704a-05a. Specifically, ZO Kozick testified:

> A    Mr. Dombroski came in the office one morning, and he had plans with him, and he said he needed to get a permit; and, he showed me what he was doing -- he told me what he was going to do, and *he said he was going to make apartments downstairs where the bar used to be at Pine Brook Inn*. Upstairs was a living quarters for the people who ran it before.
>
> I said, Are you going to expand any walls and do anything? He says, No. I'm not extending anything. All I'm doing is taking the kitchen and bar out and putting rooms in there, he says, for the apartment, he says. I said, any bearing walls that you're going to be dealing with? He says, No. He says, Everything is all open. He says, I'm building everything inside, he said. I says, Mike, you don't need a permit.
>
> Zoning says that -- the old zoning says that you had -- if you have work inside of a house and don't touch any bearing walls, you don't need permission, and that is what I went by; and, I said, Mike, you don't have to go. He had the plans all there. He showed them to me. I said I don't need to look at them. You don't need a permit.
>
> Q    Did you, though, have some sort of look at the plans that he had provided to you?
>
> A    He laid them out there, and I saw them, but that was it.

*Id.* ZO Kozick further testified about the changes to the zoning and building codes that came into effect by 2009. He testified that, in 2006-2007, the Property was located in the Agricultural District. N.T., 2/12/18, at 23; R.R. at 706a. However, at

12

the time, "*one and two family units were allowed in an [Agricultural District].*" *Id.* (emphasis added).

After this meeting, Landowners moved forward with their project, believing they were given a green light to proceed. In 2007, Landowners converted the first floor of the Property from a restaurant/bar to a four-bedroom apartment. F.F. No. 17. Landowners rented the first floor beginning in 2008. F.F. No. 20.

For years after the renovations were made, the Township never enforced the Ordinance. Landowners complied with other Township laws related to their multi-family use. Starting in 2012, Landowners complied with the Township's requirements for multi-family residential landlords by reporting the names of all tenants. F.F. No. 41.

The evidence adduced by Landowners shows that municipal officials knew or should have known of the violation as early as 2008, but did not enforce the Ordinance until September 2016. However, the crux of the matter is whether ZO Kozick's "act" amounts to some form of "active acquiescence" in the illegal use. The Board argues that Landowners fail to cite a single case standing for the proposition that an applicant is entitled to vested rights or variance by estoppel based on an alleged verbal representation by the zoning officer. Indeed, most of the cases where a variance by estoppel was granted, the municipality issued a permit. However, the issuance of a permit is just one example of active acquiescence. In *Vaughn*, 947 A.2d at 225, this Court held that the property owners were entitled to a variance by estoppel where the zoning officer advised them that they did not need a permit to construct a retaining wall and owners paid for construction of the wall. *See CN Development Co. v. Zoning Hearing Board of Summit Township* (Pa. Cmwlth., No. 876 C.D. 2010, filed February 24, 2011) (applying doctrine of equitable estoppel

13

where the zoning officer intentionally or negligently advised landowners that they did not need a further permit to complete the construction).[4] *But see Ferguson Township v. Zoning Hearing Board of Ferguson Township*, 475 A.2d 910, 912-13 (Pa. Cmwlth. 1984) (a landowner may not gain a vested right by relying on the statements of mere ministerial officers, such as a zoning officer or his secretary).

Here, as in *Vaughn*, ZO Kozick, after reviewing Landowners' proposed plans, advised Landowners that they could proceed with the renovation of the first floor without a permit. Landowners relied on ZO Kozick's representation. ZO Kozick's representation that Landowners could proceed with the proposed plan without a permit, following his review of the proposed plans, reasonably led Landowners to conclude their use was lawful. *See Vaughn*, 947 A.2d at 218; *but see Pietropaolo*, 979 A.2d at 981-82 (landowner who claimed to have spoken to someone with township could not identify the person or state what his position was, and landowner did not inform this individual that gathering employees, equipment maintenance, and loading equipment on trucks, would be conducted, in addition to the allowed "storage" of vehicles, but that he merely asked if he could "keep his equipment" on property and was told "yes," which was insufficient to constitute clear, precise and unequivocal evidence of innocent reliance on validity of use of property for landscape business); *Skarvelis*, 679 A.2d at 283 (property owner cannot acquire right to a variance by estoppel through actions or representations of someone who does not speak for the municipality).

Next, we examine whether Landowners acted in good faith and relied innocently upon the validity of the use throughout the proceeding. The Board and

---

[4] Section 414 of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414.

Objectors both argue that Landowners cannot establish good faith because Mr. Dombroski failed to specifically ask about the zoning in his meeting with ZO Kozick. ZO Kozick advised Mr. Dombroski that he did not need a permit in response to Mr. Dombroski's question regarding the need for a *building* permit. They argue that Mr. Dombroski should have known to ask about zoning because he was an established, experienced business contractor. Mr. Dombroski readily acknowledges he was not aware of the zoning until he received the notice of violation. But, by that same token, Mr. Dombroski met with ZO Kozick, an established and experienced zoning officer, to discuss his plans before proceeding. ZO Kozick was the zoning officer for the Township, having served in this position from 1972 until 2009. N.T., 2/12/18, at 17; R.R. at 704a. Even if Mr. Dombroski did not ask the precise question about zoning, *he was forthright about the change in use with the municipal officer in charge of zoning*. *See Petrosky v. Zoning Hearing Board of Upper Chichester Township*, 402 A.2d 1385, 1388 (Pa. 1979) (rejecting "the notion that a citizen who does attempt to check the zoning statutes by making inquiry of the proper officials, who certainly should be expected to have knowledge about zoning, has not exercised due diligence"). According to ZO Kozick's tesitmony, at the time Mr. Dombroski met with him, a variance was not required because multi-family dwellings were permitted in the Agricultural District under the prior law. N.T., 2/12/18, at 23; R.R. at 706a.

As for the other criteria, Landowners made substantial expenditures in converting the first floor. Clearly, Landowners will suffer hardship in the loss of renovation expenditures as well as continued rental income if they cannot use the first floor as an apartment.

15

As for the threat to public health, safety and welfare, Objectors and neighboring property owners presented evidence regarding complaints made about the Property's student tenants. The complaints included the occurrences of bonfires; golf balls being hit onto Objectors' property; the firing of arrows or guns; public urination; parking on Objectors' property; late night activity; a party with approximately 150 people in attendance that lead to 23 citations from the police; at least three complaints filed with the Township on August 31, 2015, September 11, 2015, and September 20, 2015; and continued problems with waste and trash. *See* R.R. at 154a-157a, 160a, 164a -170a, 177a, 191a.

However, the asserted harm is not based on the use itself but on the actions of a few bad tenants. The use itself is not contrary to public health, safety, morals and the general welfare of the community. In fact, Landowners may legally operate the second-floor apartment unit under the Ordinance. Although we empathize with the neighboring property owners, enforcement of the Township's Nuisance Ordinance is the appropriate remedy to address their concerns.

Upon review, Landowners met the criteria for variance by estoppel. Landowners established that (1) they relied on ZO Kozick's representations that they could change the use of the first floor from a restaurant and bar to a four-bedroom apartment unit without obtaining any permits; (2) based on that reliance, they made substantial expenditures by renovating the first floor; (3) they innocently believed, pursuant to ZO Kozick's representations, that a multi-family dwelling was a permitted use; (4) enforcement of the Ordinance would cause them to lose their investment and rental income; and (5) the use itself does not pose a threat to public health, safety and welfare. Thus, we conclude that the trial court erred by denying Landowners a variance by estoppel for their multi-family dwelling use.

16

Accordingly, we reverse.[5]

_____
MICHAEL H. WOJCIK, Judge

---

[5] In light of this determination, we will not address Landowners' second issue regarding vested rights.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Dombroski and Elizabeth :
Dombroski, husband and wife, :
 :
   Appellants :
 :
   v. : No. 1050 C.D. 2018
 :
Dallas Township Zoning Hearing :
Board and Alan Pugh and Brenda :
Pugh, husband and wife :

## O R D E R

AND NOW, this 21st day of May, 2019, the order of the Court of Common Pleas of Luzerne County, dated June 29, 2018, is hereby REVERSED.

_____
MICHAEL H. WOJCIK, Judge